## TOLEDO & ANN ARBOR R. R. CO. v. MILES B. JOHNSON.

*Railroad aid notes—Equitable assignment—Construction and consideration— Reasonable time—Validity of incorporation—Abatement of suit by transfer of contract—Instructions upon facts.*

1. An aid note that had been drawn to the order of a railroad company which fell into bankruptcy was transferred by the assignee's deed and a subsequent conveyance, and sued on by the final holder. *Held,* in an action on the note, that as the deeds had been lost certified copies thereof were admissible as tending to show that plaintiff, having succeeded to the franchises of the promissee company, was a pro_ per person to perform on the promissee's part the contract embodied in the note; they would not, however, be admissible evidence of the transfer of such contract.

2. Successive assignments and deliveries of an aid note drawn to the order of a railroad company were *held* sufficient to create an equitable assignment of the contract embodied in it, and to authorize the final holder to sue on it in his own name, as equitable assignee.

3. The legality of the incorporation of a railroad company can only be attacked by the State, and is not open to inquiry as between the parties in a collateral action by it upon a transferable aid contract of which it is the equitable assignee.

4. An agreement to pay a certain sum to the order of a specified railroad company "in six months after the first cars run *over the road* from" one specified point to another inside the contemplated termini, does not postpone the period of payment until after the completion of the whole road.

5. Where the consideration of a transferable aid note given to a railroad company is the benefit to be derived from the construction of its road, it is immaterial whether the road is built by one company or another so long as it is built over substantially the line originally laid out.

6. In an action on an agreement to pay a certain sum of money to a rail. road company in a specified time after the cars begin to run, evidence to show what would be a reasonable time for completing the road is inadmissible.

7. The transfer of a negotiable agreement after bringing suit at law for the breach thereof does not abate the suit or affect the issue.

8. In an action on a note there was no error in charging that it was the plaintiff's property at the beginning of the suit, if the fact was fully proved and there was no contrary evidence.

Error to Monroe.   (Joslyn, J.)   October 23.—January 7.

Assumpsit.   Defendant brings error.   Affirmed.

*C. A. Stacy* and *Otis A. Critchett* for appellant.

*Ira R. Grosvenor* for appellee.

Champlin, J.   This suit was commenced on the 24th day of February, 1879.   It was brought to recover as damages the amount agreed to be paid by the terms of the following agreement:

"$100.00.                              Dundee, Mich., Oct. 4, 1871.

For the purpose of promoting and aiding the construction of the Toledo, Ann Arbor & Northern Railroad, and in consideration of the benefits to be derived therefrom, I do hereby pledge and agree to pay to the order of the Toledo, Ann Arbor & Northern Railroad Company the sum of one hundred dollars, payable in six months after the first cars run over the road from Ann Arbor to Toledo.   Payable on or before the above time specified, without interest.

                                                  Miles B. Johnson."

The declaration avers that plaintiff has become, by assignment, transfer and delivery previous to the commencement of suit, the sole owner of the said contract, and all rights and benefits growing out of the same; avers that all the conditions in said contract have been fulfilled on the part of the said road and its assigns, and that the cars did run over said road six months previous to the commencement of this suit.   The defendant pleaded the general issue, and gave notice of the statute of limitations; also that the contract declared on was obtained by the fraudulent representations of the agent of the Toledo, Ann Arbor & Northern Railroad Company, and also that the Toledo, Ann Arbor & Northern Railroad Company was not, on the 4th day of October, 1871, a corporation under the laws of this State, and has never been at any time since.   The case was once before in this Court, and is reported in 49 Mich. 148.

The corporation named in the contract commenced to build the road, but before completion it was declared bankrupt in

the district court of the United States for the Eastern district of Michigan, in proceedings instituted for that purpose, and E. D. Kinne was appointed its assignee. To prove title to the contract declared on, plaintiff offered in evidence a certified copy of a deed from the assignee in bankruptcy to Benjamin P. Crane. This was objected to for the reason that the record of a deed is not made by law evidence of the sale or conveyance of personal property, and because the said deed does not describe the contract in question or purport to convey it. Plaintiff then offered testimony tending to show that such a deed had been executed but had been lost, and showed by the deputy register of deeds that he recorded said deed and compared it with the record, and that the record was a true copy of said deed; and thereupon the court overruled the objection and admitted the certified copy of the deed in evidence. The plaintiff then offered a similar record of a similar conveyance from Crane to James M. Ashley, which was admitted against defendant's objection.

This ruling of the circuit judge constitutes the ground of the defendant's first and second exceptions. The testimony was admissible. It was material for the plaintiff to show that it had succeeded to the rights and franchises of the Toledo, Ann Arbor & Northern Railroad Company, and had furnished the consideration upon which defendant's promise was based, and the deeds were competent for this purpose. Although the certified copies of the deeds would not be competent evidence that the contract in question was conveyed by them, yet they were competent and admissible evidence to show that the plaintiff was a proper person to perform the contract on the part of the promisee, as having succeeded to its franchises, rights and interests, and might in legal contemplation be said to be a proper party to perform it. The franchises and other property of the Toledo, Ann Arbor & Northern Railroad Company were sold under a decree of the court of bankruptcy to Benjamin P. Crane, and a conveyance was made by the assignee to him on the 6th day of October, 1875. Crane made no attempt to organize a railroad corporation, but on the 9th day of June,

1877, sold and conveyed all the property, assets and franchises so purchased by him to James M. Ashley, of Toledo, Ohio, who on the 23d day of November, 1877, filed with the Secretary of State a declaration of incorporation; and plaintiff claims that this declaration was filed in pursuance of and was authorized by section 2 of Article I of Act 198 of the Session Laws of 1873.

The plaintiff also gave evidence tending to prove that the contract in question was assigned and delivered to Kinne under the proceedings in bankruptcy; that Kinne sold and delivered it to Benjamin P. Crane; that Crane sold and delivered it to James Ashley; and that Ashley sold and delivered it to plaintiff. This testimony was independent of the several deeds before mentioned, and was sufficient to create an equitable assignment of the contract and to authorize the plaintiff as equitable assignee, to maintain a suit upon it in its own name. How. Stat. § 7344; *Cook v. Bell* 18 Mich. 387; *Draper v. Fletcher* 26 Mich. 154. Plaintiff also showed that at the time this suit was commenced it was a corporation doing business in this State.

The plaintiff then gave evidence tending to show demand by the plaintiff upon the defendant for the sum claimed by the plaintiff upon said contract, after the road had been in operation six months from Ann Arbor to the State line and city of Toledo, in Ohio, and that the payee named in said contract expended about twenty per cent. of its capital stock in grading and preparing the line of the road and in the purchase of ties, before it was declared bankrupt, and that the road as finally built from the State line to Ann Arbor, was constructed by plaintiff upon the identical line as originally surveyed and located by the Toledo, Ann Arbor & Northern Railroad Company, and was completed on the 18th day of May, 1878, and that the said road has since been and now is operated as a railroad between said points, and on the 8th day of July thereafter commenced running regular trains of cars over the entire road between Toledo and Ann Arbor, and doing a regular freight and passenger business, and at the time of the beginning of this suit, and for some

time before, the plaintiff was doing business in Michigan as a railroad corporation, running cars in that name under the laws of the State of Michigan.

The defendant introduced in evidence a certified copy of the articles of incorporation of the Toledo, Ann Arbor & Northern Railroad Company, dated the 23d day of October, 1869, and filed in the office of the Secretary of State on the 26th day of November, 1869. The termini named in the articles were "some point on the line of the states of Ohio and Michigan, in the county of Monroe, at or near the northern terminus of the Toledo & Northern Railroad" and Owosso, in Shiawassee county. We do not consider it necessary to discuss the question of the legality or regularity of the incorporation of the plaintiff. As was stated when this case was before this Court on a former occasion, such question could not be raised between these parties, and could only be inquired of by the State. The question is not an open one since the rulings of this Court in the cases of *Toledo & Ann Arbor R. R. Co. v. Johnson*, 49 Mich. 148; *Wilcox v. Toledo etc. R. R. Co.* 43 Mich. 584; *Detroit, L. & L. M. R. R. Co. v. Starnes* 38 Mich. 698; *Michigan M. & C. R. R. Co. v. Bacon* 33 Mich. 467.

This record shows that plaintiff has attempted to organize under the laws of this State as a corporation, and was acting as such at the time of the commencement of this suit, and was then the owner of the contract in question. It claimed to have performed the conditions incumbent on the Toledo, Ann Arbor & Northern Railroad Company to be performed, to entitle such company or its assignee to recover the amount payable thereon. This was not a personal contract which could be performed by the Toledo, Ann Arbor & Northern Railroad Company only. It contemplates a transfer of the contract. The agreement is to pay to the order of the company. The object was to aid the construction of the Toledo, Ann Arbor & Northern Railroad, and the consideration is stated therein to be the benefits to be derived therefrom. Now it is claimed by defendant that the consideration for the promise is the construction of the whole line of road named

in its articles, and that the plaintiff has not shown performance in this respect, and 'therefore it cannot recover. The contract however, must be construed as a whole, and the agreement is to pay on or before six months from the time the first cars run over the road from Ann Arbor to Toledo. This shows that payment was not to be deferred until the whole line was completed. It would seem to be immaterial to defendant what railroad company actually constructed the road, so long as it was done substantially upon the line adopted by the company named; the benefits derived from its construction would be the same whether built by one company or another. *Michigan Midland & Canada Ry. Co. v. Bacon* 33 Mich. 466; *Stevens v. Corbitt* id. 458; *Detroit, L. & L. M. Ry. Co. v. Starnes* 38 Mich. 698.

It is also claimed by defendant that as the contract is silent as to the time the first cars should run over the road from Ann Arbor to Toledo, the law implies that they should commence to be run in a reasonable time; and that he had a right to introduce evidence before the jury of the situation of the railroad company, and of the statements of the parties who obtained the contract in question at the time it was entered into, as to what had been done and was being done toward the completion of the road, as bearing upon the question of reasonable time within which the contract should be performed. The testimony was properly excluded. The defendant's agreement was to pay on or before six months after the first cars ran over the road from Ann Arbor to Toledo, and he could not be compelled to pay before that event should happen. If he had wished to limit the time beyond which his liability would not extend, he should have incorporated it in the contract. The same kind of testimony was offered in the case of *Stange v. Wilson* 17 Mich. 342, and for a like purpose, and what was there said upon the subject renders a further discussion unnecessary.

It appeared upon the cross-examination of one of plaintiff's witnesses that any assets he might get out of the contract in suit he would hand over to the Toledo, Ann Arbor & Grand Trunk Railway Company. The defendant's coun-

sel then asked the witness: "How did the Toledo, Ann Arbor & Grand Trunk Railway Co. get that note or contract?" The court inquired how that was material. The defendant's counsel stated that he presumed it was material in this way: that the Toledo & Ann Arbor Railroad Company are not entitled to recover unless they have the paper. The court excluded the testimony. The testimony was irrelevant to the issue and was rightly excluded. The proof was that the contract belonged to plaintiff at the time suit was commenced. It was produced upon the trial and read in evidence, and a transfer subsequent to bringing suit in a court of law for breach of the contract did not abate the suit or affect the issue. At plaintiff's request the court charged the jury that the contract declared on was the property of the plaintiff at the time this suit was commenced, to-wit, on the 24th of February, 1879. It is claimed by defendant's counsel that this charge was erroneous; that the court usurped the functions of the jury; and that the question of ownership at the time of the commencement of suit should have been left to them to decide. The evidence upon this point was all in one direction. There was no conflicting evidence whatever upon it, and the fact was fully proved. There was nothing to be left to the jury upon the facts covered by the instruction, and there was no error in this part of the charge.

The remaining errors assigned are so fully covered by the previous decisions of this Court above cited that a further consideration of them is unnecessary.

The judgment is affirmed.

The other Justices concurred.