The Citizens' Electric Light & Power Company v. Louis Sands and the City of Manistee.

| 95    | 551 |
| s55NW | 452 |
| 130   | 22  |

*Municipal corporations—Electric-light companies—Contract—Use of poles—Validity of resolution.*

1. Chapter 127, How. Stat., which provides for the incorporation of electric-light companies, to which it gives power to lay, construct, and maintain conductors for conducting electricity through the streets of any city, town, or village where such corporations carry on their business, with the consent of the municipal authorities thereof, under such reasonable regulations as they may prescribe, does not prohibit the common council of a city from granting the like privilege to a private citizen.

2. The statute imposes the duty of prescribing such reasonable regulations upon the municipality itself, which, in the case of a city, acts through its common council; and the council cannot delegate the performance of this duty to a committee.

3. A resolution granting permission to a private citizen to use such of the poles erected by an electric-light company in the streets of a city, pursuant to an ordinance giving the common council control of the poles so far as to permit their use by other parties for lighting purposes upon payment of the reasonable portion of their cost to the company, as may be necessary in placing lights under a street-lighting contract made by him with the city, which resolution provides for the payment by said contractor of such part of the cost of the poles so used as the council may thereafter determine, and which does not limit or fix the extent or manner of their use, is unreasonable and void.

Appeal from Manistee. (Judkins, J.) Submitted on briefs January 12, 1893. Decided June 1, 1893.

Bill to restrain the use by defendant Sands of complainant's electric-light poles. Complainant appeals. Decree reversed, and one entered restraining the use of the poles until suitable rules and regulations for their joint use are adopted. The facts are stated in the opinion.

*Smurthwaite & Higgins,* for complainant.

*Dovel & Smith,* for defendant Sands.

*George L. Hilliker,* for defendant city.

LONG, J. Complainant was incorporated under chapter 127, How. Stat., entitled "Electric-Light Companies." Section 10 of that chapter provides:

"Every such corporation shall have power to acquire and hold all such real and personal property as shall be necessary for carrying on the business of such corporation; and shall have full power to produce, generate, furnish, and sell such electricity and electrical light as may be desired in any city, town, or village where such corporation carries on its business, for lighting public or private buildings, streets, or grounds, and for any other purposes; and such corporation shall have power to lay, construct, and maintain conductors for conducting electricity through the streets, lands, and squares of any such city, town, or village, with the consent of the municipal authorities thereof, under such reasonable regulations as they may prescribe; and such corporation may make all such contracts and by-laws as may be deemed necessary and proper to carry into effect the foregoing powers."

Under this section, complainant made application November 25, 1890, to the common council of the city of Manistee for permission to erect poles, wires, etc., in the streets of that city, and filed a bond as required by the city ordinance in relation thereto. At this time the city ordinance provided:

"SEC. 1. No person shall erect or maintain within the limits of the city of Manistee any poles, wires, or lamps for the purpose of electric lighting, without first making application therefor to the council in writing, and filing in the office of the city clerk a good and sufficient bond, in an amount and with sureties to be approved by the council, conditioned that the principal will comply in all respects with the provisions of this ordinance.

"SEC. 2. At the time of filing said bond such person shall also file with said city clerk a complete diagram, showing precisely the number and location of all poles,

which diagram shall be approved by the council before poles can be erected.

"SEC. 3. Persons erecting poles under the provisions of this ordinance shall furnish the council a sworn statement of the accurate cost of poles and erecting the same. All poles to be straight, and of uniform size and length above ground, and to be and remain under the control of the council so far as to permit their use by other parties for lighting purposes, upon payment of the reasonable portion of the cost of poles and putting up the same, and by the city free of charge for purposes of maintaining fire-alarm and telephone wires for public use; any and all poles to be removed whenever ordered by the council."

The petition of the complainant was referred by the common council to a committee, who reported thereon December 11, 1890, as follows:

"Your committee, to whom was referred the petition," etc., "beg leave to report that they have examined the diagram of said company, showing the location of poles, and recommend that said diagram be approved, except that, on streets where electric-light poles are already erected, the petitioner be required to use said poles as far as practicable. We also recommend that the bond filed by said petitioner be approved, and that a permit as above conditioned be granted the petitioner under the ordinance as this day amended."

The amendment to the ordinance referred to provided that wires were to be not less than 20 feet above ground at any point, and the poles not less than 40 feet high. Two new sections were also added, the first of which provided as follows:

"SEC. 4. No person, corporation, or company erecting or maintaining within the limits of the said city of Manistee any poles, wires, or lamps for the purpose of electric lighting or power, shall at any time enter into any combination with any other person, corporation, or company engaged in the business of supplying electric light or power within the said city concerning rates to be charged for electric lighting or power either to the city or to private consumers; nor shall such person or corporation make any consolidation, transfer, or division of the territory, streets,

or avenues of the said city with any other person, corporation, or company engaged in said business. Any violation of the provisions of this section shall work a forfeiture on the part of such person, corporation, or company to the said city of Manistee of all privileges or franchises granted under this ordinance."

The report of the committee was adopted and approved by the council. Complainant erected its poles according to the diagram recommended by the committee, said poles being of the height of about 40 feet above ground. It also strung its wires thereon, and in all respects complied with the requirements of the council under the provisions of the statute and ordinances of the city, except as hereinafter stated.

It was proposed by certain individuals in said city to organize an electric street railway company, and procure a franchise from the common council for that purpose; and, as alleged by complainant, said company intended to construct such street railway. The complainant obligated itself to transfer to this company, when organized, a one-half interest in all its poles along the line of said street-railway company, or to lease to it the use of complainant's poles for the purpose of stretching and extending the wires necessary for the operation of the street cars by electricity. No company, however, ever organized.

Prior to the organization and incorporation of the complainant, the defendant Louis Sands had erected in the city of Manistee an electric light plant for furnishing to private consumers an incandescent light, and for that purpose had erected poles in the streets of the city. Though not incorporated, defendant Sands was doing business under the name of the Sands Electric Light Company. The complainant charges in its bill that soon after its organization, finding that in many instances the poles of defendant Sands were located convenient for its use, it asked the common council that Sands be requested to file a state-

ment of the cost of his poles as a preliminary step to having the common council investigate the matter, and, if found practicable, and for the public good, and advantageous to the complainant, and not an unwarranted interference with the property rights of defendant Sands, to make reasonable regulations for the use of Sands' poles by the complainant; but that defendant Sands refused to comply with such request, and gave notice that he should resist any attempt on the part of the city or complainant to use any of his poles by complainant or any other person; and, upon inquiry of its electrician, complainant ascertained that the joint use of any pole by two lighting companies was impracticable or impossible, and the complainant thereupon erected its own poles in all places.

At and prior to the organization of the complainant, defendant Sands had entered into a contract with the city to light the streets with gas. After complainant was organized, Sands made a proposition to light the streets with electric light for the unexpired portion of the gas-lighting contract. Complainant and Sands each entered a bid for this contract, complainant's being much lower than that of Sands; but, under the advice of the city attorney, the contract was let to Sands, as it was considered that the gas-lighting contract was valid. Under the contract made with Sands for lighting the streets with electricity no mention was made of the poles of complainant or of any other person, and the city, by the contract, was in no manner bound to supply poles to Sands for his use under the contract, and the use was not such as was reserved to the city, being for neither fire-alarm nor telephone purposes.

The complainant's poles were erected under contract. Before settlement was had with the contractors, the common council passed a resolution requiring the complainant to file a statement of the cost of its poles. The complain-

ant thereafter filed a writing explaining its inability to furnish the required information, for the reason that it had not yet made a settlement with its contractors, but that it would furnish the same within a period of two weeks. At the same time it notified the common council that a one-half interest in the poles had been transferred to the electric railway company, to be used by it when organized. Within a week thereafter the complainant stated the cost of its poles approximately at $12.60 each, and filed this statement with the city clerk. On the same evening that this statement was filed a regular meeting of the common council was held, and complainant, by its attorney, appeared before the council, and stated orally the reason why the complainant could not furnish a more particular statement, and promised to furnish the same within a short time. The council thereupon, and on the same evening, passed the following resolution:

" *Resolved*, that Louis Sands be granted permission to use such of the poles erected by the Citizens' Electric Light & Power Company in the streets of the city of Manistee, pursuant to the provisions of an ordinance of said city approved November 11, 1886, and the amendments thereto, as may be necessary in placing the lights under his contract of June 8, 1891; and that he pay such part of the cost of any and all such poles used by him belonging to said company as this council may hereafter determine."

No notice had been given the complainant that such resolution would be offered, but complainant's attorney, being present at that time, requested the council to let the matter lay over for one meeting, until it could be looked up, and, if the council had a right to pass such resolution, notice could be given to all parties interested, and such rules and regulations made by the council as would protect the interests of all concerned. The resolution was passed, notwithstanding this objection. The next

day the defendant Sands, with a force of men, commenced putting up cross-arms upon complainant's poles.    It is contended that no question was asked complainant as to the manner in which or places where the defendant's wires could be stretched upon its poles without damage or loss to it.    The complainant had no opportunity to be heard, and had no voice in determining how its poles should be used.    No rule or regulation was made by the common council as to when the electric currents should be let on or shut off of the wires used there by the complainant or Sands; and the complainant was not consulted by Sands as to the length of the cross-arms, or how Sands should string his wires thereon.  ·

When Sands commenced putting up the cross-arms for the purpose of stringing his wires, the complainant filed its bill, claiming that, if the common council had power to pass such a resolution, it could only be done after a full hearing as to the practicability of using the poles by two rival parties, and that such power could not be granted Sands as was attempted by the resolution, unless done by ordinance, or something having the authority of law, prescribing fully and expressly such rules and regulations as would fully protect the property of the parties and others and the lives of the employés.    On the filing of this bill an injunction was issued against Sands, restraining his use of the poles.    The city, thereupon, conceiving that it was interested in the subject-matter of the litigation, procured a stipulation from the parties, admitting the city as a party defendant to the action.  ·The testimony was taken in open court, and upon the hearing complainant's bill was dismissed, without costs.    Complainant appeals.  ·

It is contended by complainant:

1. That the resolution permitting Mr. Sands to use its poles without its consent, and without fixing the limits of the use, or regulating the manner in which each party is

to string its wires and turn on its current, is unreasonable.

2. That the common council of the city had no power to grant to Mr. Sands the right to the use of complainant's poles for the purposes declared, for the reason that an individual could not contract with the city to erect poles or string wires for electric lighting.

It is conceded that under the charter the council had the power to pass the ordinance providing for the joint use of the poles; but it is contended that the resolution passed by the council authorizing and empowering Mr. Sands to use them is too general in its terms, and, not limiting and fixing the manner or extent of the use, it is unreasonable and void.   It is contended that it is universally known that electric currents sufficient for lighting purposes constantly endanger life and property, and must be conducted with the greatest care; that employés must know when the currents are let on and shut off.   It is further contended that the unreasonableness of the resolution is shown from the fact that it does not provide the number of arms on each pole, the number of wires on each arm, or whether arms shall be used at all.   It does not specify what space or that any space shall be left between the wires and poles so that the complainant's employés may pass through to its wires above.   It has no provision against crossing wires, and no provision when the currents shall be let on or shut off to enable the employés to handle the wires when necessary, and makes no provision whatever for the safety of the employés.   It does not specify what poles shall be used, or leave complainant any voice in the premises as to whether it has any spare room upon any particular pole or poles.   It does not specify whose duty it shall be to repair poles, or, in case of decay or destruction, erect new ones.   And, finally, it is contended that the resolution simply sells absolutely to Sands an undivided interest in the poles at such price as the council may thereafter fix, with the absolute right to

use such as he may need, just as he pleases, and leaves the complainant helpless in his hands.

Defendant Sands claims that there was a committee of the council empowered to act in the matter after this resolution was passed, and that such committee could fix the manner of the use. This committee was known as the "street-lighting committee;" but nothing appeared of record in the proceedings of the common council empowering this committee to act or make any regulations for the use of the poles. It is contended, further, by defendant Sands that after the resolution was passed he called upon the president of the complainant company, and was told by him to designate any poles he wished to use for public lighting, and he could use them, and that he would be charged in proportion to the number of wires used; and that, acting under this, and the direction of the committee, he attempted to put up the cross-arms, when he was stopped by the injunction. There is no claim, however, on the part of the defendant that any arrangement was consummated with Mr. Hart, president of the company, as to the manner of the defendant's use of the poles, or the manner of stringing the wires. The committee of the council who directed Sands to go on with the work and use the complainant's poles do not pretend that any regulations were adopted or the manner of their use fixed by the committee, or how many wires were to be placed on the poles, or where located.

There can be no doubt that under the charter provisions the common council had the power to pass the ordinances above set out, and to grant the franchise to the complainant, with the reservations therein contained. After this was done, however, and the complainant had erected the poles, the council could not, by this resolution, do what was attempted to be done here, without first fixing in a definite way the use which it was attempted to confer

upon defendant Sands. The power to make such reasonable regulations for the use of the poles is lodged by the statute in the council, and cannot be delegated to a committee. *Chilson v. Wilson*, 38 Mich. 267; *Vincent v. Board of Supervisors*, 52 Id. 340. The language of the statute is that "such corporation shall have power to lay, construct, and maintain conductors for conducting electricity through the streets," etc., "with the consent of the municipal authorities thereof, under such reasonable regulations as they may prescribe." This language means that the municipality itself shall make the regulations, and such regulations shall be reasonable. The municipality acts through the common council, and it is for that body to make the regulations. No regulations were ever made by it in this matter, and whatever regulations were attempted to be made were ordered by the committee. An ordinance or regulation, to be void for unreasonableness, must be plainly and clearly unreasonable. *White v. Kent*, 11 Ohio St. 550; *Neier v. Railway Co.*, 12 Mo. App. 25. It is apparent from what has been stated, however, that the regulations claimed to have been made by the committee for the use of complainant's poles by Sands were unreasonable, and the complainant cannot be held by their terms. By the power given to Sands under them he became possessed of absolute dominion over the poles, to the utter exclusion of the complainant, and in entire disregard of its rights.

The court below, we think, was in error in dismissing complainant's bill and dissolving the injunction. The injunction should have been continued until the city, by its council, had fully investigated the matter, and made such regulations for the use of the poles by Sands as the circumstances of the case demanded. The city had granted this franchise to the complainant, and the complainant, acting under the powers conferred, had expended large sums of

money in erecting poles and stringing its wires.   The power granted to Sands by the committee in effect transferred the property rights of complainant in the poles to Sands, and left the complainant at his mercy.    The common council also owed a duty to the employés of both complainant and Sands to make such regulations for the joint use of the poles that the lives of such persons should not be endangered.    Public policy requires this.    Electricity is a dangerous current, unless confined in proper channels; and the lives of employés are not safe unless they are advised what are live and what are dead wires at all times.    If two opposing companies can with safety use the same poles, then such regulations must be made that lives and property shall not be endangered; if regulations cannot be made so that lives and property can be protected by the use of the same poles by opposing companies, then any provision for such joint use would be most unreasonable.    We are not able to say from this record that a joint use cannot be made of the poles by Sands and the complainant.    If such joint use appeared conclusively to us to be dangerous, we should unhesitatingly set aside the ordinances and resolution granting to Sands any use of complainant's poles.    We are not, however, satisfied upon that point, and shall in the present case only decide the resolution unreasonable, as not providing proper regulations for a joint use.

The second point raised by complainant's solicitors is not well taken.    It is apparent that under the charter of Manistee the common council may permit parties the use of the streets for gas or water pipes, or for erecting and maintaining poles for the purpose of telegraph and telephone service or electric lighting.    Section 1, subd. 34, chap. 11, of the charter [1] provides:

" The council shall have authority to enact all ordinances

---

[1] Act No. 48, Laws of 1882.

95 Mich.—36.

and to make all such regulations consistent with the laws and Constitution of the State as they may deem necessary for the safety, order, and good government of the city and the general welfare of the inhabitants thereof; but no exclusive rights, privileges, or permits shall be granted by the council to any person or persons, or to any corporation, for any purpose whatever."

Chapter 22, § 1, gives the council control of all public highways, bridges, streets, avenues, alleys, and public grounds within the city, and provides that it shall cause the same to be kept in repair, and free from nuisance. Section 13 of said chapter gives the city the right to light the streets and public places and regulate the setting of lamps and lamp-posts therein, and protect the same. Section 3 of chapter 20 confers authority upon the council to lay out, establish, improve, and light the public grounds and parks within the city; and section 15, chap. 22, gives the council control over the placing of telegraph and other poles in or over the streets.

It is contended, however, that the act under which the complainant is organized limits the right of the council to permit electric-light poles to be placed upon any of the public streets *to the use of a corporation to be organized under that statute.* Section 10 of the act has been quoted above. It provides that such corporation "shall have power to lay, construct, and maintain conductors for conducting electricity through the streets," etc., *"with the consent of the municipal authorities thereof."* This was not intended by the Legislature to limit the right of the municipal authorities to grant the privilege to any other than such a corporation. The Legislature has authorized the formation of such corporations, and empowers the municipal authorities to deal with them; but it has not intended to compel the municipal authorities to deal with such corporations against their will. It is true that the

highways of the State, including streets in cities, are under the paramount control of the Legislature, and all muncipal control over them is derived from it. 2 Dill. Mun. Corp. § 680. The Legislature has the exclusive right to say to whom any rights in the said streets shall be granted, and the municipality can only grant such rights under the powers conferred upon it by the legislative department of the government. The cases cited by counsel for complainant go to the extent that, in the absence of power granted by the Legislature to a municipality, such municipality cannot confer upon either an individual or a corporation power to use the same. *Telegraph Co. v. Newark,* 49 N. J. Law, 344 (8 Atl. Rep. 128).

It is said that great evils would result if these privileges were granted individuals, instead of corporations organized for such purposes. This is a matter of legislative concern, and not a question for the courts. But we do not see how such evils can result if such privileges are permitted to individuals. It is the concern of the municipality to light its streets by the cheapest and best attainable means, and the municipal authorities must have some discretion in determining the merits and reliability of the various methods of reaching that result. *City of Detroit v. Circuit Judge,* 79 Mich. 384.

The power granted the city of Manistee, by its charter, over the streets for lighting purposes and the erection of poles, carries with it the right to make contracts for such purposes with individuals as well as with corporations organized for such purposes.

For the reasons pointed out, however, the decree of the court below must be reversed, and decree entered here in favor of complainant, restraining defendant Sands from using its poles until the city, by its council, shall, after notice to the parties interested, adopt suitable rules and

regulations for such joint use. The complainant will recover against defendant Sands the costs of both courts.

The other Justices concurred.