CITY OF SAGINAW *v.* SWIFT ELECTRIC LIGHT CO.

1. MUNICIPAL CORPORATIONS—ELECTRIC LIGHT COMPANIES—IN-
SPECTION OF POLES.

A city ordinance providing for a reasonable inspection of all
poles used by an electric light company within the city, to
ascertain whether the same are secure, and making the cost
of such inspection a charge against the company, is valid,
where the statute under which the company was organized
gives to the municipal authorities the right to prescribe
"reasonable regulations" for the conduct of its business.

2. SAME—ORDINANCES—UNREASONABLE PROVISIONS.

But a charge of 50 cents per annum for each pole so inspected,
when the actual cost of inspection is about five cents only, is
unreasonable.

3. SAME—GRANT OF POWERS—RIGHT TO AMEND.

A city cannot justify the imposition of unreasonable burdens
upon an electric light company, to which it has granted by
ordinance the right to erect its poles in the streets upon condi-
tions stated, under the power reserved to it in a subsequent
ordinance relating to such company to amend, alter, or repeal
the latter ordinance.

Error to Saginaw; Wilber, J. Submitted June 6, 1897.
Decided July 13, 1897.

*Assumpsit* by the city of Saginaw against the Swift
Electric Light Company to recover an amount alleged to
be due under an ordinance providing for an inspection by
the city of the poles maintained by the defendant. From
a judgment for plaintiff, defendant brings error. Re-
versed.

*Hanchett & Hanchett,* for appellant.

*E. L. Beach,* for appellee.

HOOKER, J. The defendant is an electric light com-
pany organized under the general statute (1 How. Stat.

chap. 127), which gives it the right to do business under "such reasonable regulations as the municipal authorities may prescribe." On May 9, 1881, the common council gave this company authority to erect poles for carrying its wires, under the supervision of the street committee. On May 6, 1889, the council passed "An ordinance to regulate the putting up, taking down, maintaining, and repairing telegraph, telephone, and electric light poles and wires." Section 2 of the ordinance is as follows:

"The city shall have the right to use the upper 20 inches of all poles hereafter put up, to support its fire-alarm telegraph wires; and it may, when necessary, put alarm boxes upon them, and connect said wires therewith."

August 5, 1895, the council passed a general ordinance entitled "An ordinance to regulate the placing and putting up and taking down of electrical wires and cables, and the placing of conduits therefor, in the streets, alleys, and public spaces of the city of Saginaw." Section 19 of this ordinance reads as follows:

"The city of Saginaw shall cause all poles used and maintained and occupied by any person, company, or corporation for stringing or sustaining his or its electrical wires or cables in said city to be inspected once each year, to ascertain whether the same are secure, and maintained in accordance with this ordinance of said city; and such person, company, or corporation shall pay to said city for such inspection the sum of 50 cents per annum for each pole so maintained by him or it."

It appears from the agreed statement of facts that in pursuance of this section all the poles on the east side of the city of Saginaw were inspected by a man employed under the direction of the common council and the board of public works; that he inspected in all 3,072 poles, of which he found that 1,045 belonged to the defendant. He spent 66½ days doing this work, and received $2.25 a day for his wages. The total amount, then, that he received for his work, was $149.62. This would make the cost about five cents for each pole, so that the actual cost of inspecting the defendant's poles would be $52.25.

It appeared further that the defendant has inspected its 1,045 poles in three days, and that two men go over the entire line every day, and inspect the poles and trim the lamps. There are lamps on 158 of the poles. The men who do this work are paid $55 a month, and it is a part of their work to inspect the poles and the lines each day. It appeared further that since the passage of the ordinance of May 6, 1889, the defendant has erected and maintained 150 new poles, and that since that date the city has used the top 20 inches of a number of these poles in accordance with the provisions of section 2 of that ordinance. This same provision was re-enacted in the ordinance of 1895, in section 3, appropriating 24 inches, instead of 20 inches, to the city. It appeared also that each year since the year 1890 the defendant has been assessed in the sum of $15,000 upon its real estate and the sum of $40,000 on its personal property, which includes the poles and wires of the company, and the company has paid these taxes each year to the city.

Two points are made in opposition to the judgment of the circuit court, both attacking the validity of the ordinance: (1) That the amount fixed for the inspection is unreasonable; (2) that the council has imposed a tax under the guise of providing for inspection.

When the public safety requires it, the legislature has power to impose burdens to secure immunity from danger, under the general police power, and it is customary to delegate the power in proper cases to municipal corporations. Prent. Police Powers, 14. In this case the statute expressly confides to the city the power to *regulate* the construction and maintenance of wires, etc. There is manifest propriety in this. If, as contended by counsel, it were clear that this provision was not designed to secure the safety and protect the public against dangers, or if it were clear that it was an attempt to raise revenue under a pretense, we should not hesitate to hold the ordinance invalid. The ordinance provides for nothing but an inspection of poles once a year to ascertain whether the

same are secure, and maintained in accordance with the ordinance. While we think that it is proper for the city to make a reasonable inspection, and we are not prepared to say that this is not a reasonable one, there is no occasion for requiring the electric company to pay more than a sum sufficient to pay the reasonable cost of such inspection. The pole is in plain sight, may be easily ascended, if necessary, and an examination as to soundness below the surface cannot be difficult or expensive. We may take judicial notice of these things. In addition, the evidence shows that this inspection was actually made for $149.62,—about five cents per pole. We are of the opinion that the price fixed by the ordinance is unreasonable, providing as it does for a charge of over $1,500 for protection which actually is secured for one-tenth the sum, and which it is obvious may always be secured, so far as this ordinance undertakes to secure it, for much less than the rate fixed.

It is hinted that this ordinance is valid under the power reserved by the ordinance of May 6, 1889, viz., "The right to amend, alter, or repeal this ordinance is hereby expressly reserved." If by this counsel means to claim that there are no restrictions upon the power of the council to impose burdens upon this company, which, under its statutory authority, it has permitted to erect its plant and engage in its business, we cannot agree with him. The company has a right to exist and do business by virtue of the statute. It depends upon the city only for its right to lay, construct, and maintain its conduits for electricity through the streets, etc. This consent was given by the resolution of May 9, 1881, *the only qualification being that the poles should be erected under the supervision of the street committee.* On May 6, 1889, the council passed an ordinance regulating the setting of poles, and it is this ordinance which contains the reservation of power to amend, alter, or repeal. We do not feel called upon to discuss the question whether a power reserved in an original grant to alter, amend, or repeal makes valid

any and all burdens that may be imposed upon the company or person accepting such grant, because no such *power was reserved* in this original grant. The consent contemplated by the statute was given, and the defendant had a right to erect its poles and carry on its business, subject to the right of the city under the statute to prescribe reasonable regulations. As already stated, we consider this an unreasonable one.

The judgment is reversed, with costs of both courts. No new trial is ordered.

The other Justices concurred.