CITY OF KALAMAZOO *v.* KALAMAZOO HEAT, LIGHT & POWER CO.

1. CORPORATIONS—GAS COMPANIES—ARTICLES OF INCORPORATION —CITY FRANCHISE—PAROL EVIDENCE.

Parol evidence is inadmissible to sustain a claim that a gas company was incorporated, and was granted a franchise by a city, for the sole purpose of boring for natural gas, where the articles of incorporation and the local franchise name other purposes, the execution of which is sought to be defeated.

2. SAME—DEFECTIVE INCORPORATION—ESTOPPEL.

After a city has granted a franchise to a gas company, under which operations have been carried on and expenditures in-

curred, it cannot question its right to corporate existence on account of irregularities in the execution and filing of the articles of incorporation.

3. SAME—ASSIGNMENT OF FRANCHISE

A proposal by one corporation to purchase all real estate and assets, including the franchises, of another, was accepted by the stockholders of the other, who adopted a resolution for that purpose reciting that it sold and conveyed all its real property and assets, together with franchises, for the sum stated in the proposal. The directors were authorized to carry out the arrangement, and they passed like resolutions. Pursuant thereto, a deed of the real estate and appurtenances was made, and the grantee was put into possession of the plant and all other property. *Held,* that there was a valid assignment of the grantor's franchises.

4. SAME—USE OF STREETS—VALIDITY OF GRANT.

A city ordinance authorizing a gas company to lay pipes in the streets is not void because it fails to reserve the right to the city to say what streets shall be so used, and the city is bound by its terms.

5. SAME—CONDITIONS OF FRANCHISE—BOND FOR PERFORMANCE.

Where a city ordinance granting a franchise to a gas company to lay pipes in the streets provides that the work shall be done under the supervision and direction of the city engineer, and that the streets shall be left in as good condition as they were before, the city may impose reasonable conditions and restrictions as to the manner of doing the work, and may exact a bond of the company before it enters upon the same.

Appeal from Kalamazoo; Buck, J. Submitted April 4, 1900. Decided May 15, 1900.

Bill by the city of Kalamazoo to restrain the Kalamazoo Heat, Light & Power Company from laying gas-pipes in the streets. From a decree for complainant, defendant appeals. Reversed.

*Boudeman & Adams* (*N. H. Stewart*, of counsel), for complainant.

*William G. Howard* and *E. A. Crane* for defendant.

MOORE, J. In April, 1887, the Kalamazoo Natural
Gas & Fuel Company was organized. The portions of
the articles of association which are material read as fol-
lows:

"We, the undersigned, desiring to become incorporated
under the provisions of the laws of the State of Michigan
for the purposes hereinafter stated, do hereby make, exe-
cute, and adopt the following articles of association, to
wit:  *   *   *

"The purpose or purposes of this corporation are as fol-
lows: To drill, bore, and mine for natural gas, petroleum,
and other valuable substances, and to gather and collect
the same, and to lay pipes to conduct the same, build res-
ervoirs to hold the same, and to market said natural gas,
petroleum, and other valuable substances, when obtained,
in such way and manner as shall be considered most expe-
dient and advantageous to said company; also to lay
pipes and conduct gas, petroleum, and other valuable sub-
stances through, over, and to any place or places in Mich-
igan from places where the same may be produced; also
to manufacture gas for the purposes of fuel and generating
heat, and to pipe or otherwise conduct the same to market,
and to market and dispose of the same; also to purchase
and store materials from which such gas may be manu-
factured; and also to purchase, hold, and lease lands for
the purpose of carrying out the objects and purposes of
this association.

"The capital stock of the corporation here organized is
the sum of ten thousand dollars, and the number of shares
thereof is four hundred. The amount of said stock
actually paid in at the date hereof is the sum of one
thousand and twenty dollars, being ten per cent. of said
capital stock.  *   *   *

"The term of existence of this corporation is fixed at
thirty years from date hereof."

Thirty-four persons subscribed to the articles of asso-
ciation. Their acknowledgments were taken before a
notary public. The articles of association were on May
7, 1887, filed in the office of the secretary of state, and on
the 11th day of May, 1887, in the office of the county clerk
of Kalamazoo county. On the 6th of June the common
council adopted an ordinance the provisions of which
read as follows:

"ORDINANCE NO. 52.   RELATIVE TO KALAMAZOO NAT-
URAL GAS & FUEL COMPANY.

"SECTION 1. The city of Kalamazoo ordains: That per-
mission and authority are hereby given to the Kalamazoo
Natural Gas & Fuel Company, of the city of Kalamazoo,
a corporation organized under and by virtue of the laws
of the State of Michigan, its successors and assigns, to
lay, operate, and maintain all such mains and pipes as are
or may be necessary and useful in conducting natural gas,
and all other substances, matters, and things used and to
be used by the said Kalamazoo Natural Gas & Fuel Com-
pany, its successors and assigns, to manufacture or gen-
erate or make heat, or to be used for fuel or illuminating
purposes, under the surface of the ground, along and
under any and all streets, alleys, and highways of the city
of Kalamazoo, and over, upon, or under any and all
bridges in said city, for the period of thirty years from and
after the date of the passage of this ordinance, with the
right and privilege of putting in the necessary escape
pipes; subject, however, to all the conditions, specifications,
and limitations hereinafter contained.

"SEC. 2. That said mains and pipes shall be laid at
least 20 inches below the surface of the ground, and,
when laid, the trenches shall be laid and filled in with
earth, stones, or gravel, or of all, so as to leave the streets
and alleys through which said pipes may be laid in as
good condition as they were previous to the laying of said
pipes or mains.

"SEC. 3. That all pipes to be laid under the provisions
of this ordinance, and all escape pipes erected, shall be
so laid and erected under the supervision and direction of
the city engineer of the city of Kalamazoo, subject to the
approval of the city council of said city.

"SEC. 4. That the said Kalamazoo Natural Gas & Fuel
Company, its successors and assigns, shall charge all con-
sumers of gas and fuel supplied by it the same rate per
1,000 feet for all gas or fuel consumed, and that all within
the said city of Kalamazoo desiring to make use of such gas
and fuel shall be supplied by the said Kalamazoo Natural
Gas & Fuel Company, its successors and assigns, as soon as
practicable, consistent with the ability of said Kalamazoo
Natural Gas & Fuel Company, its successors and assigns,
so to do.

"SEC. 5. That the said Kalamazoo Natural Gas & Fuel
Company, its successors and assigns, shall have the right
to abandon its rights and privileges hereby granted, with,

right to remove its pipes and mains, but shall restore the streets and alleys to the condition that they were in prior to the laying of said pipes.

"SEC. 6. That the provisions of this ordinance shall not be altered, amended, or repealed without the consent of the said Kalamazoo Natural Gas & Fuel Company, its successors and assigns.

"SEC. 7. That the said Kalamazoo Natural Gas & Fuel Company shall signify its acceptance of this ordinance in writing, signed by its president and secretary, and filed with the city clerk of Kalamazoo, within 30 days from the date of the passage of this ordinance, and, in default of such written acceptance, this ordinance and the provisions thereof shall become and be inoperative and void.

"SEC. 8. It shall be the duty of the said Kalamazoo Natural Gas & Fuel Company, and the said company agrees, not to keep any street or place where its pipes may be laid torn up or unsafe for travel any longer than is necessary to lay pipes and make repairs; and said company further agrees to save the said city of Kalamazoo harmless from all expense, damages, and actions it may be put to, sustain, or be brought against it by reason of the said company failing to comply with the terms of this ordinance, or by reason of any neglect of said company, its agents or servants."

After this ordinance was granted, several thousands of dollars were paid into the treasury, and the company commenced to bore for the purpose of obtaining natural gas. This work was continued the greater part of the year, but without success. Some of the stockholders sold their shares of stock to other stockholders. From time to time committees were appointed for the purpose of visiting other cities, and learning about the methods of making gas, with a view of operating under this franchise. In 1892 a considerable quantity of gas-pipe was distributed on the streets of Kalamazoo by a company that had corresponded with the Natural Gas & Fuel Company, but no pipes were at that time laid. In 1896 the company which is defendant herein was organized under the general laws of the State applicable to gas companies. It is claimed this company was organized in pursuance of an agreement that it should be merged with the Kalamazoo Natural

Gas & Fuel Company, which should convey to it its franchise and all other assets, and that residents of Kalamazoo should furnish $6,000 in cash, and the other parties in the new corporation should furnish certain patents, and sufficient money to build the plant, pipe the streets, and put the plant into operation. It is claimed the necessary transfers were made, and a large amount of money raised. The city was notified of the desire of the new company to lay pipes. Under the supervision of the city engineer, about three miles of pipes were laid, and the defendant company began to manufacture and sell gas. One of the principal streets in the city is Burdick street. Prior to, but shortly before, September, 1897, it had been paved with vitrified brick. In September, 1897, the defendant company desired to lay its pipes upon Burdick street, and so notified the city authorities. The authorities objected, because the street had been recently paved, and the pipes could not be laid without injuring the paving. The defendant insisted upon its right to lay the pipes. The city then commenced this proceeding.

The issues, as finally raised by the bill and all the amendments, are as follows: The bill of complaint, as first filed, alleges:

That the Kalamazoo Natural Gas & Fuel Company was never properly organized, in that all of its subscribers did not properly execute the articles of association; and that its sole object was to bore for natural gas, and that all rights under the franchise are limited to that purpose, and would not permit the manufacture of gas, and the city could rescind the franchise at its pleasure.

That the articles of association were not recorded in the register of deeds' office for Kalamazoo county, and therefore it could not receive a franchise.

That the common council exceeded its authority in issuing franchise No. 52, in that it granted the privilege to the Kalamazoo Natural Gas & Fuel Company to use the streets, without reserving the right to say what streets, and therefore it was void.

That the consent of the city council was not obtained to the transfer of franchise No. 52 from the Kalamazoo

Natural Gas & Fuel Company to the defendant; hence the transfer was void.

That the Kalamazoo Natural Gas & Fuel Company was organized for a purpose different from that stated in its articles of association and in its franchise, and that it abandoned all right to franchise No. 52 more than seven years ago, and therefore it was void.

The original bill was amended twice. After filing the original bill, an injunction was issued, preventing the defendant from laying the pipes on Burdick street. This injunction was modified, and the pipes were laid on that street. The first amendment alleges:

That there was no valid assignment of the franchise from the Kalamazoo Natural Gas & Fuel Company to the Kalamazoo Heat, Light & Power Company.

The second amendment alleges:

That the process used by defendant company for making gas is a failure; that the originator or patentee of the Hall process several years ago attempted to impose upon the people of another locality by using natural gas, claiming it to be made by the Hall process; that later, at Grand Rapids, Mich., they attempted to deceive the people as to the amount of gas they furnished; that they also tried to establish a plant to make the same gas at Chicago and Buffalo, and failed; that the present plant was established for the purpose of deceiving people, and for the purpose of establishing plants elsewhere; that defendant company is insolvent; that defendant's process for making gas is not practicable, and will not make good gas; that the gas cannot be made as cheap as claimed by defendant company; that defendant's gas plant sends out an obnoxious gas, so that it has become a public nuisance; that the defendant company is controlled by one Armison and one Cadwell, and neither of them is a taxpayer in Kalamazoo, or pecuniarily responsible; that the defendant has not repaved the streets where it has laid its pipes; that the complainant has had to repair the streets, and the defendant has neglected to repave or repair and pay for the same; that the Hall process for making gas is a fake; that the complainant has the right to disregard all privileges and rights given by Ordinance No. 52.

The case was tried in open court, and a mass of testi-

mony taken. The circuit judge filed a written opinion, in which, after saying it was unnecessary to consider more than one of the questions raised, he then proceeds to say:

"The question is thus fairly and squarely presented whether the defendant company has the right, under Ordinance No. 52, to lay its gas mains and pipes in any streets or alleys of the city of Kalamazoo at pleasure, and, if it so chooses, leave the streets in a dangerous condition, to be repaired at the expense of the taxpayers of the city. This question admits of but one answer.     *     *     *

"Before passing the case, it may not be amiss to say that some of the matters stated in the pleadings, and contested by the parties in their proofs, have not been considered by the court in any way. Whether the process used by the defendant in the manufacture of gas is or is not one which produces the best results, whether the gas manufactured by defendant is or is not commercially valuable, whether such gas can or cannot be furnished at a less cost than other gas, are all matters between the defendant and the consumers of its gas, and are not necessary to be considered in deciding the vital questions involved in the case.

"A decree may be entered perpetually enjoining the defendant, its successors and assigns, from laying gas mains or pipes in, along, or under any street, lane, or alley or public ground in said city of Kalamazoo, except by permission of the city council of said city, and under such reasonable conditions and restrictions as may be imposed by said city council."

A decree was entered in accordance with the opinion. From that decree complainant did not appeal. The defendant company did appeal. It concedes it may not arbitrarily lay its pipes where it pleases, and that the city has a right to supervise the laying of its pipes to see that it is properly done, but insists it has the right, subject to the right of reasonable supervision under the terms of the franchise, to lay its pipes in all the streets of the city.

Many questions are raised by counsel, but we shall not discuss them all.

It is claimed the only purpose of forming the Kalama-

zoo Natural Gas & Fuel Company, and the granting to it a franchise, was to bore for natural gas. That may have been the principal purpose, but the articles of association and the provisions of the franchise name other purposes, and these terms and provisions cannot be limited by oral testimony.

It is claimed the company abandoned its franchise. This claim is successfully contradicted by the record.

It is urged there never was a legal corporation known as the Kalamazoo Natural Gas & Fuel Company, because the provisions of the statute were not followed. It is said some of the subscribers to the articles were firms or co-partnerships, only one member of which purported to acknowledge for the firm, and also because four corporations signed for stock, which corporations were not authorized to take stock. It is also objected that the articles of association should have been recorded in the office of the register of deeds, instead of being filed in the office of the county clerk. The statute provides that any number of persons, not less than five, may sign articles of association. Section 7117, 2 Comp. Laws 1897. Upwards of 20 persons properly signed and acknowledged the articles of association, and it is doubtful if any of the irregularities were fatal to the organization of a corporation *de jure;* but we do not deem it necessary to decide that question. It is apparent an honest effort was made to organize a corporation in conformity with the provisions of law. Articles of association were prepared, signed, and acknowledged, and filed with public officials. Shares of stock were subscribed and paid for. Officers were elected. A petition was presented to the complainant city for a franchise. The city treated the corporation as one in fact, and granted to it a franchise, under the terms of which it operated and expended a large sum of money. The State has never raised any question about the regularity of the corporation. Under these circumstances we understand the rule established by law as well as reason is that parties recognizing the existence of corporations by dealing with them have

no right to object to any irregularity in their organization. *Swartwout* v. *Railroad Co.*, 24 Mich. 393; *Merchants & Manufacturers' Bank* v. *Stone*, 38 Mich. 779; *Toledo, etc., R. Co.* v. *Johnson*, 49 Mich. 148, 55 Mich. 456 (13 N. W. 492, 21 N. W. 888); *City of Grand Rapids* v. *Grand Rapids Hydraulic Co.*, 66 Mich. 606 (33 N. W. 749); *Eaton* v. *Walker*, 76 Mich. 579 (43 N. W. 638, 6 L. R. A. 102); 2 Mor. Priv. Corp. §§ 750–754; *Detroit City Ry.* v. *Mills*, 85 Mich. 648 (48 N. W. 1007).

It is insisted the defendant is not the assignee of the Natural Gas & Fuel Company. The oral testimony is that the defendant succeeded to all the rights of the earlier company. The records of that company recite that, at a meeting where 376 out of the 400 shares of the stock of the company were. represented, a proposition had been made by the defendant company to purchase all the real estate, property, and assets, including the franchise, of the earlier company, for $1,000; that a resolution was unanimously adopted "that the proposition * * * be and is hereby accepted, and that this company does sell and convey to said last-mentioned corporation the real estate, property, and assets of all kinds, together with its franchises, and all rights and privileges thereunder, of this corporation, for the cash sum of one thousand dollars." The directors were authorized to take all necessary measures to carry out the arrangement. . Resolutions of a like character were passed by the board of directors. A deed of all the real estate and appurtenances was made to defendant company. The consideration named therein was $1,000. The books and papers of the earlier company were turned over to the later one. Some of the stockholders were paid in money for their stock; others of them exchanged it for stock in the new company. The new company took possession of the plant of the old company, and has since claimed to be the owner of it; and we have no doubt it has succeeded to the rights of the earlier company. Before this suit was brought, upwards of $30,000 had been expended by the two companies. It is doubtless

true the ordinance was not a wise one to make, but it was within the power of the council to make it, and the city is bound by its terms.

There is a good deal of testimony tending to show that the defendant company, when it laid its pipes, did not put the street in good repair. It was its duty to do so. It may not tear up the streets, and leave them out of repair. The city may not exclude the company from laying its pipes in any of the streets, alleys, or highways of the city, but it may insist upon the work being done under such reasonable conditions and restrictions as shall make it certain the work will be properly done; and, if it deems it necessary, it may exact a bond for a reasonable amount before the work is entered upon.

The decree of the court below is reversed, and one will be entered here in accordance with this opinion.

MONTGOMERY, C. J., LONG and GRANT, JJ., concurred HOOKER, J., did not sit.