TRAVERSE CITY GAS CO. *v.* MAYOR AND COMMON COUN-
CIL OF CITY OF TRAVERSE CITY.[1]

1. ORDINANCES—GAS PIPES—STREETS—POWER OF COUNCIL.
 Under a city ordinance granting a gas company the use of
 "any and all of the streets, lanes, alleys, and public grounds"
 for the purpose of laying iron pipes for gas, subject "to such
 rules and regulations as the council may from time to time
 prescribe," and providing that "main pipes shall be laid in
 alleys whenever practicable, and when so ordered by the
 council," the city may require main pipes to be laid in the
 alleys, although they are not as well adapted to the laying of
 mains as the streets, and a large additional expense will be
 incurred.

2. SAME.
 A gas-light company organized under chapter 190, 2 Comp.
 Laws, can only use the streets of a city with the consent of
 the common council.

3. ORDINANCES—CONSTRUCTION.
 Ordinances conferring grants are construed liberally in favor
 of the public.

*Certiorari* to Grand Traverse; Mayne, J.   Submitted
January 28, 1902.   (Calendar No. 19,122.)   Decided
March 18, 1902.

*Mandamus* by the Traverse City Gas Company to com-
pel the mayor and common council of the city of Traverse
City to grant the right to lay gas pipes in certain streets.
From an order denying the writ, relator brings *certiorari*.
Affirmed.

*George E. & M. A. Nichols* ( *Pratt & Davis*, of coun-
sel ), for relator.

*George H. Cross*, for respondent.

---

[1] Rehearing denied April 22, 1902.

MOORE, J. This case was commenced by petition for *mandamus* from the circuit court of Grand Traverse county to the mayor and common council of the city of Traverse City, directing the mayor and common council to convene, and grant to the petitioner the right to lay its main gas pipes in certain streets of said city. The circuit judge refused to grant the relief prayed. The case is brought here by *certiorari* to review his action. The important question involved is, What are the rights of the respective parties under an ordinance granted in January, 1901? three sections of which read as follows: Section 1 provides:

"That H. B. Webber and E. F. Gallagher, of Ionia, Michigan, their associates, successors, or assigns, as individuals, or as a body corporate, under the name of the Traverse City Gas-Light Company, be and they are hereby authorized to use, 'for the term of thirty years from the passage of this ordinance, subject to the provisions of this ordinance and to such rules and regulations as the council of said city may from time to time prescribe, any and all of the streets, lanes, alleys, and public grounds in said city, including any territory that may hereafter be added to the same, for the purpose of constructing and maintaining a gas-light plant in said city, and to lay down and maintain in said streets, lanes, alleys, and public grounds, from time to time, as said company, its successors or assigns, may deem expedient, iron pipes for carrying gas for supplying said city and the inhabitants thereof with gas:' *Provided*, that said company shall not unnecessarily obstruct the passage of any street, lane, alley, or public ground, and shall, within a reasonable time after making an opening or excavation for the purpose aforesaid, repair the same, and leave it in as good condition in all respects as before such excavation was made."

Section 7 provides:

"That said main pipes shall be laid in alleys whenever practicable, and when so ordered by the council. Said grantees, before laying any such pipes in the streets, alleys, highways, and public places in said city, must first obtain permission therefor from the council upon application in writing."

Section 9 provides:

"That twenty-four hours before opening any street, alley, or public place, the said grantees shall give notice to the board of public works in writing of such intention, stating the place where and the object for which such opening is to be made, and shall obtain from the board of public works a permit therefor."

In pursuance of the requirements of the ordinance, Webber and Gallagher made application to the common council for permission to lay main pipes on certain streets of said city, which was referred to the street committee, and the request granted upon their report.  At the time of making the report granting the request referred to, the street committee, upon its own motion, granted permission to lay the main pipes on territory extending beyond that to which permission was asked, which system, as reported by the committee, may be called a "system through the alleys."  Webber and Gallagher refused to accept the permission so gratuitously extended, claiming they did not deem it expedient or practicable to lay the main pipes as designated and prescribed in said report, on account of the large and extra outlay in laying the pipes and in making connection with consumers.

On July 15, 1901, Webber and Gallagher asked for permission to lay the main pipes upon a number of streets in the said city beyond the permits already granted.  The common council, upon receiving this application, laid the same on the table, and assigned as a reason that certain property owners and citizens living upon Union street and Sixth street had remonstrated because of the fear of the citizens that escaping gas from the main pipes might kill the shade trees along said streets, and further claiming that it was practicable to lay pipes in the alleys; and said council insists upon petitioner laying its pipes according to the plan in the places so reported by the street committee to the common council, and adopted by it, claiming that, under section 7 of the ordinance, said council has the right to require the pipes to be laid in the alleys, and that they are judges of whether it is practicable or not.

The petition alleges that before it was filed, and after the ordinance was granted, petitioner had made an investment of $35,000 to begin and erect its plant that was then in process of construction. It avers the council has no right to compel the relator to put its pipes in the alleys, and that it will cost a good deal more to do so than in the streets.

The council answered this petition, and insisted it was practicable to use the alleys. It denied the relator had made application for the use of the streets described in its petition. It admitted a communication from the relator in reference thereto, and claimed that the council was ready to receive and entertain and act upon any and all proper petitions to lay pipes in the alleys or streets, but stated that "it was the intention of the council to require the main pipes to be laid in the alleys whenever practicable so to do, and when, in the exercise of the judgment and discretion of the council, it shall deem it advisable and expedient to do so." It is claimed in the answer that the laying of the mains in the streets would kill the shade trees; that preparations are being made to pave the principal streets of the city in the immediate future with asphalt pavement, and, if the pipes are laid in the streets, it will prevent the use of that kind of pavement, because the escaping gas will disintegrate and destroy such pavement, and such has been the experience of cities where gas mains have been laid under asphalt pavement.

At the request of the relator certain questions were submitted to a jury. The jury made findings in relation to these questions. Those we deem material are as follows:

"The difference in expense in laying the main pipes to petitioner between the two plans was $2,723.50.

"The difference in expense in connecting with consumers between the two plans was $4,330.

"That 104 more consumers could be reached under the city's plan than the relator's plan.

"That certain alleys were not as well adapted in their present condition for laying main pipes as the streets.

"That the alley between State street and Front street from Union street to Franklin street, the alley between State and Washington streets from Park street to Franklin, the alley between Sixth and Seventh from Bohemia to Oak, the alley between Eighth and Ninth from Bohemia to Oak, the alley between Ninth and Tenth from Bohemia to Oak, Bohemia street from Sixth to Twelfth, alley east of Union street from Seventh to Twelfth, alley between Eighth and Ninth, Ninth and Tenth, Tenth and Eleventh, Eleventh and Twelfth, to Lake avenue, being adjacent to the streets the use of which was demanded by the relator, were as well adapted for laying gas mains as the streets. * * *

"That the extra expense in reaching consumers and laying main pipes under the city's plan would deprive the relator of its profits for two and one-half years."

It is insisted on the part of the respondent that *mandamus* is not the proper remedy; that, if it was, the writ is prematurely brought. We do not deem it necessary to pass upon these two questions.

In the brief, counsel for relator say:

"When the city granted the franchise to relator by section 1, it invested the relator with the absolute right to lay its pipes in any of the streets, alleys, or public places in said city, whenever the relator might deem it expedient so to do. *City of Kalamazoo* v. *Kalamazoo, Heat, Light & Power Co.*, 124 Mich. 74 (82 N. W. 811)."

We think counsel state the rule wrongly. A reference to the case will show that, in the franchise there granted, the city failed to reserve the right to say where the pipes should be laid, and it was said, in view of that situation:

"It is doubtless true the ordinance was not a wise one to make, but it was within the power of the council to make it, and the city is bound by its terms."

It is not probable, had the city reserved the right to have the pipes laid in the alleys, the reservation would not have been upheld.

Section 7123, 2 Comp. Laws, which defines the general powers of these companies, among other things provides the pipes "shall be laid with the consent of the municipal

authorities of such cities, townships, or villages through which the same are laid, under such reasonable regulations as they may prescribe." In *People* v. *Gas-Light Co.*, 38 Mich. 154, it is said:

"The State has shown by the incorporating act that public policy is not opposed to, and is in favor of, allowing gas companies to exist, as they only can exist by having power to lay their pipes. The consent of the municipal corporation is required because the terms on which streets may be safely allowed to be occupied for the purposes of laying gas pipes can be best determined by leaving the regulation to be harmonized with all other exigencies by the authorities controlling their use. The law contemplates that permission will not be unreasonably refused or unreasonably burdened, but regards the municipality as competent to determine the proper conditions for itself.

"The exercise of the power of using streets for laying gas pipes is rather an easement than a franchise, and a similar power is used as often for private drainage and other purposes as for more general purposes. It is a matter peculiarly local in its character, and which should always be, to a reasonable extent, under municipal supervision, to prevent clashing among the many convenient uses to which ways must necessarily be subjected for water, drainage, and other urban needs."

In *Rapid Ry. Co.* v. *City of Mt. Clemens*, 118 Mich. 133 (76 N. W. 318), it was held that a street-railway company which is authorized to put in a Y at a given street, with the proviso that the company shall, if so ordered by the common council, remove the Y within 60 days after service upon it of a copy of an order requiring the removal, is bound by the proviso, and must remove the Y. See, also, *Citizens' Electric Light & Power Co.* v. *Sands*, 95 Mich. 562 (55 N. W. 452, 20 L. R. A. 411); *Detroit Citizens' St. Ry. Co.* v. *City of Detroit*, 110 Mich. 384 68 N. W. 304, 35 L. R. A. 859, 64 Am. St. Rep. 350); *City of Saginaw* v. *Swift Electric Light Co.*, 113 Mich. 660 (72 N. W. 6); *Horner* v. *City of Eaton Rapids*, 122 Mich. 117 (80 N. W. 1012). Ordinances conferring grants are construed liberally in favor of the public. *City*

*of Detroit* v. *Railway Co.*, 95 Mich. 456 (54 N. W. 958, 20 L. R. A. 79, 35 Am. St. Rep. 580).

"In this case the council, unlike the council in *City of Kalamazoo* v. *Kalamazoo Heat, Light & Power Co.*, *supra*, reserved to itself the right to say "that said main pipes shall be laid in alleys whenever practicable, and when so ordered by the council," and required the corporation, before laying pipes, to obtain the permission of the council. The first time permission was granted to lay any pipe the same committee which reported in favor of granting that permission reported out the present plan, which was adopted at the same time the permission was given. Before a foot of pipe was laid by the corporation, it knew what interpretation the council put upon the provisions of section 7. The provisions of this section are as much a part of the agreement the relator has with the city as any part of it. If the contention of the relator is to prevail, the attempts of common councils, when granting like franchises, to safeguard the interests of the city or village for which it is acting, will prove abortive, and, when the franchise is once granted, the control of the city or village over the streets is lost. It has not been made to appear that the laying of the pipes in the alleys as required by the council is not practicable.

The order of the circuit court is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.