THE CITY OF GRAND RAPIDS v. THE GRAND RAPIDS
HYDRAULIC COMPANY ET AL.

*Private corporation—Charter—Forfeiture—Organization of city—
Rights of water company.*

1. The enlargement of city powers cannot, by implication, *destroy* or
   *amend* a private corporation charter, the amendment or repeal of
   which must refer to it.

2. Where no *exclusive* privileges are given to either of two corpora-
   tions, there can be no repugnancy.

3. A charter can only be forfeited by direct proceedings by the Attor-
   ney General.

4. The lapse of thirty-two years after the expiration of the time
   within which a water company was to be ready to furnish water
   under its charter bars a prosecution for non-compliance ; it not
   appearing that any demand for water had been unreasonably
   refused.

5. A water company, authorized by its charter to lay pipes and dis-
   tribute water in a city, has a right of access to the streets or
   alleys for that purpose, which right must be exercised in harmony
   with the public convenience ; and it is the duty of the city to
   regulate its exercise by ordinance in such a way as to prevent
   injury to other interests, while not interfering with the *reason-
   able* exercise of such right.

6. Where a city succeeds by its charter to the *rights* and *obligations*
   of a village, whose territory is included in the new corporation,
   this in law continues the body politic as the same *legal* body.

7. It has never been supposed that a city, or any other public cor-
   poration, changed its *rights* or *identity* by gaining or losing ter-
   ritory.

Appeal from superior court of Grand Rapids. (Parrish,
J.) Argued June 14, 1887. Decided July 7, 1887.

Bill to prevent defendant from laying or keeping water-
pipes in the city of Grand Rapids. Complainant appeals.
Decree modified and affirmed. The facts are stated in the
opinion.

*J. W. Ransom* (*M. J. Smiley,* of counsel), for complainant.

*Blair, Kingsley & Kleinhans,* for defendants.

CAMPBELL, C. J.   Complainant filed the bill in this cause to prevent the defendant company, in whose behalf the individual defendants are charged also, from continuing to lay or keep water-pipes in the city of Grand Rapids, not only in certain streets named, but also in any other streets or public places in the city.

The case made by the bill is substantially this: That in 1872 the city was authorized to set up a complete system of water-works for all purposes usual, either municipal, domestic, or for protection against fire, and that under that and subsequent legislation the city and its various public boards have carried out that object by gathering water, and distributing it in pipes and reservoirs, expending much money and incurring a large bonded debt, and that any competition or hinderance will be disastrous to the public prosperity of the city and its finances.

The defendant is charged with such unlawful competition, and with proposing to enlarge its operations.   Defendant company was incorporated in 1849 by "An act to incorporate the Grand Rapids Hydraulic Company," approved April 2, 1849, (Laws 1849, p 298), with a capital of $30,000, with authority to procure water from springs, from Cold brook, and the lakes from which it has its source, and from no other sources of supply, and with power to lay pipes and make reservoirs, and the usual works for supply and distribution. The company was forbidden to use the water for propelling machinery,—

"Or for any other purpose than that of supplying the village of Grand Rapids with a pure, wholesome supply of water for household purposes and domestic uses, and to supply reservoirs for the extinguishing of fires."

It was authorized to—

"Agree with the corporation of the said village of Grand
Rapids, the inhabitants of said village, and others choosing
to use or take said water, regarding the rates at which the
same shall be paid for: *Provided,* that the said company
shall within five years from the passage of this act furnish
and continue, with no unreasonable delay, a supply of pure
and wholesome water sufficient for the use of all such citi-
zens dwelling in the said village as shall agree to take it on
the terms to be demanded by said company, in default
whereof the said corporation shall be dissolved."

The village of Grand Rapids was incorporated by special
act in 1838. Laws of 1838, p. 205. The village had the
usual corporate powers, and any power concerning a water
supply, if it existed, was implied and not special. On April
2, 1850, a law was passed for the incorporation of the city of
Grand Rapids, covering the village and some adjacent terri-
tory. Laws 1850, p. 361. This charter gave no specific
authority over water-works. It made the city successor to
the rights and liabilities of the village. The subsequent
changes in the charter are numerous. In 1872 the first dis-
tinct power was given to create a system of water-works.
Laws 1872, pp. 15, 16. This was—

"For the purpose of supplying the city of Grand Rapids
with water for municipal, domestic, and other purposes."

The city was authorized to get water from springs, streams,
and other bodies of water outside of the city, and to agree
for rights of way over private grounds from such source of
supply to the city, and to make the necessary rules, regula-
tions, and rates. The power has been continued under sub-
stantially similar laws, but under different boards. The
power to borrow money and issue bonds has always required
a vote of the citizens. It appears that for several years before
the filing of the bill the vote has always been against such
bonding.

The city works have been built and extended, at various
times, at a cost of several hundred thousand dollars.

The hydraulic company went on with its business, adding to its water supply and extending its circulation until about the time of the city legislation of 1872.   During that period it supplied the village and city to some extent, as well s private customers.   Since 1872, until shortly before the bill was filed, its supply has been more or less improved, as well as its works, but no considerable extension has been made in the area of distribution.

Most of the testimony relates to the character and amount of the supply of each corporation, and it is largely taken up with the considerations on the effect of competition.   The bill charges forfeiture from non-user; claims the charter of defendant does not cover the city, but only the space of the village, and that it gives no rights to use the city streets; and further relies on the ruinous competition which will destroy the value of the city works.   It claims the city never gave defendant authority to use the streets, and that such authority, claimed by assignment from certain parties to whom the city gave such privileges, has ceased, or is subject to city control.

It appears quite clearly that the defendant company was required by its charter to bring its waters from such sources as would make it likely to be wholesome, and that it was confined in its uses to a fire-supply, and to ordinary private uses.   The city is not limited either as to quality or uses.   It appears also, as a matter of fact, that the quality of defendant's supply is excellent, and that the city supply is not of good quality for domestic use.   It is manifest that, if defendant is required to quit business, the results will be disastrous to private health and comfort now, whatever they may be in the future.

Upon the argument there were two grounds taken going to the entire rights of defendant.   One was that the charter had ceased to be operative through subsequent legislation; the other is an alleged forfeiture.

66 Mich.—39.

The Legislature reserved the right to alter or repeal the charter, and it is claimed that it has been repealed by the city charter; and if not, that it has expired by limitation.

The Constitution of 1850, by section 8 of article 15, declares that—" The Legislature shall pass no law altering or amending any act of incorporation heretofore granted without the assent of two-thirds of the members elected to each house." It also, by section 16 of the same article, requires notice of any proposed change, and by section 20 of article 4 the object of every act must appear in its title.

It needs no argument to show that the enlargement of city powers cannot, by implication, destroy or amend a private corporation charter. By well-settled principles, an amendment or repeal of a charter must refer to it. This charter has never been mentioned in any subsequent statute. And there is nothing in the Constitution itself that does more than secure it against changes by less than a two-thirds vote.

Although not very important in this point of view, it is certain that where, as in this case, no exclusive privileges are given to either corporation, there can be no repugnancy. It is by no means universal for cities to control their own water supply, any more than their lighting. Our statutes contain many provisions for both public and private action in such cases. There are many cities in this country and elsewhere in which water is supplied in both ways. Had the charter of Grand Rapids forbidden private enterprise, or had it attempted to give the city a monopoly of supply, some questions might have arisen as to the limitation of rights not vested that might perhaps require attention. But there is no such provision.

As to the alleged forfeiture, it is too well settled to require discussion that a charter can only be forfeited by direct proceedings on the part of the Attorney General. But there is nothing in this record to indicate any failure of the defendant to do its full duty under the charter. Defendant has

procured a supply of water equal to the demands upon it by citizens. See *People v. Manhattan Co*, 9 Wend. 351. Thirty-two years have elapsed since the expiration of the five-years limitation within which it was to be ready to supply such persons as should agree to take water on its terms. It does not appear that any one during that time made demand that was unreasonably refused. The failure to supply reservoirs for fire is not made a ground of forfeiture. And a failure to prosecute for so long a period, if any cause of forfeiture had existed, would now effectually bar it. If there has been any subsequent ground of forfeiture, it does not appear; and, if it did, this is not the proper form of action to try it. It is only referred to here as a possible ground of estoppel.

It was suggested that the city has had a right to rely on the failure of the defendant to intervene and save it from laying out money at the risk of rivalry. But this ground is equally untenable. The defendant has never relinquished its business, and has collected rates and supplied water to its customers, and, as appears from some of the witnesses, some persons have taken water from both corporations. Neither had any legal reason to believe that the other meant to yield up competition, and we do not see that it was yielded up at all.

But it is claimed that defendant has no right to use the streets for its pipes. This ground is not, we think, tenable. When defendant was incorporated to distribute water, and authorized to lay pipes, this necessarily involved the right to do so in the usual way, so as to give access to all private property. This would require access by either streets or alleys, or both. The city is in no way concerned in damages to private rights. We cannot, however, imagine in what way private rights in the soil of the streets could be damaged by laying water-pipes under ground, in no way disturbing the use of the surface as usual. They are among the commonest and most necessary

instruments of city convenience. But, however this may be, it is quite certain they in no way interfere with the public uses of the highway. It does not follow that the defendant has unlimited power to put down its pipes when and where it pleases. The private rights must be exercised in harmony with the public convenience. The city government is made general guardian of the public interests in the streets and public grounds. The city, therefore, has not only the right, but the duty, to regulate these facilities in such a way as to prevent injury to other interests, while nothing is done to interfere with their reasonable exercise. This was explained in *Maybury v. Mutual Gas Light Co.,* 38 Mich. 154. The proper way to do this is by ordinance, and not by varying regulations, made from time to time, whenever a new pipe is to be laid down. Exceptional cases may sometimes arise, but usually the regulation must be under some definite system. In this respect the decree which provides for special application to the city council, and for action at defendant's discretion where the city refuses or neglects to act, is improper. We had occasion in *Frazee's Case,* 63 Mich. 396, to refer to the necessity of having some regulation of rights in public streets not subject to changing official discretion. The same principle applies to all street regulation defining and limiting private action. No unreasonable condition can be valid, and a proper ordinance should not be delayed if not now existing. Perhaps such provisions may exist, but we are not informed.

A more important and really the only question of much consequence in this cause is how far the charter of defendant is affected by the changed conditions of Grand Rapids. It is claimed that the village has ceased to exist, and the defendant's privileges fell with it. It is also claimed that, if this is not so, defendants are confined to the land covered by the village.

The charter of Grand Rapids, as a city, made the city suc-

cessor both to rights and to obligations of the village. This in law continues the body politic as the same legal body. It was held in *Regents of University v. Board of Education,* 4 Mich. 213, that the present university is the same legal body with the university founded in 1817, and reorganized in 1821, so that grants made to the earlier corporation vested without further action in its successor, although very radically changed. It has never been supposed that a city, or any other public corporation, changed its rights or its identity by gaining or losing territory. The same principle has been applied to the relations of special corporations which are connected with city arrangements, whether educational or for business purposes, and no new legislation is generally needed to adjust their new relations. This is illustrated in *Trustees of Erie Acadamy v. City of Erie,* 31 Penn. St. 515, and in *St. Louis Gas Light Co. v. City of St. Louis,* 46 Mo. 121; the latter case being one relating to a supply of gas.

Other cases were also cited on the argument, but the practical construction has been so uniform as to require very little discussion. Had the village remained a village, and been enlarged, the question would hardly have been raised. It is, however, worthy of remark that the charter of defendant is not limited to inhabitants of Grand Rapids. It allowed agreements to be made with "others choosing to use or take said water." There is power to furnish all persons. This would not necessarily allow the use of public streets in all directions within or without the corporation. But it negatives any narrow purpose in the charter. The small amount of capital provided for might give a practical limit to the power and duty of the defendant to extend its works; but there is no limit in the charter to the value of the property which the corporation may hold, and there are many cases in this country where the gains of companies have enabled them to enlarge their business very greatly.

If the charter had been granted a year after instead of a year before the village became a city, it would not be reasonable to construe it as referring to then existing boundaries. There is no more reason for doing so now. The practical construction by all parties was in favor of the continued relations until the city itself obtained similar powers. As already suggested, the Legislature did not attempt to give the city a monopoly, but left it to competition. Whether wise or unwise, this was the view of the Legislature, and, during the 14 years before the bill was filed, no amendment or repeal of the defendant's charter was attempted. In our opinion, the only remedy for the grievance, if it is a grievance, is by resort to the Legislature.

The bill made out no case for relief, and none was called for. But there is no objection to the declaration of rights and duties, except, as before suggested, the matter should be governed by a permanent ordinance, to be passed speedily, and to be reasonable. The decree, so modified, should be affirmed, with costs of both courts.

The other Justices concurred.