## MICHIGAN TELEPHONE CO. *v.* CITY OF ST. JOSEPH.

1. MUNICIPAL CORPORATIONS — CONTROL OF STREETS — AUTHORITY OF COURTS.

   While a circuit judge may require municipal authorities to adopt reasonable rules and regulations for the use of the streets, and may pass on the validity of their action when taken, he cannot himself prescribe the regulations.

2. SAME—TELEPHONE COMPANIES—SALE OF FRANCHISE.

   Under 3 How. Stat. § 4904e, authorizing corporations to alienate their property, a telephone company owning a franchise from a city for the use of its streets may sell the same to another corporation organized for the same purposes, without first obtaining the consent of the city.

3. SAME—PLACING POLES AND WIRES—REASONABLE REGULATIONS.

   The power resting in municipalities of making all reasonable rules and regulations for the erection and maintenance of the poles and wires of telegraph and telephone companies does not warrant the common council of a city, which has granted a franchise to a telephone company for the use of its streets, in forbidding the company to extend its lines through the streets without the council's consent, and thereafter refusing to declare the rules and regulations subject to which it may proceed with a desired extension.

Cross-appeals from Berrien; Coolidge, J. Submitted May 4, 1899. Decided October 17, 1899.

Bill by the Michigan Telephone Company against the city of St. Joseph to restrain interference with complainant's poles and wires. From the decree rendered, both parties appeal. Modified.

The averments of the bill of complaint are substantially as follows: Complainant is a corporation organized under Act No. 129, Pub. Acts 1883 (3 How. Stat. chap. 102*a*). Its principal office is in Detroit. It carries on in the city of St. Joseph and other cities and towns in the State the construction, maintenance, and operation of telephone lines and exchanges, and connects with the lines of other companies without the State. It has in this State about 460 toll stations and exchanges, 3,660 miles of lines, and 6,550 miles of telephone wire, besides several hundreds of miles of pole lines and wires used in the operation of local exchanges. April 4, 1881, the Telephone & Telegraph Construction Company, a corporation engaged in the telephone business in this State, presented a petition to the common council of the village of St. Joseph for permission to construct, maintain, and operate such a system in said village. Permission was duly granted, and that company proceeded at large expense to erect poles and stretch wires within the lines of the streets and alleys of said village until June 5, 1891, when said village became incorporated as a city. Complainant duly acquired by purchase all the property, rights, and privileges of said construction company. It has since continued to do business in said city, and has furnished to said city two telephones free of charge, and four others at rates below the usual charges. It has permitted said city to occupy certain poles with its fire-alarm wires without charge. August 3, 1897, complainant erected in a good and workmanlike manner, and in accordance with the terms of the statute, certain poles in said city, for the purpose of connecting with its central office the premises of persons who had subscribed for telephone service. August 3, 1897, the common council passed a resolution declaring said poles and wires a

nuisance, and instructed the street commissioner to forthwith remove them, and adopted a resolution providing that, if complainant thereafter should place any telephone poles in any streets or alleys of the city without first having obtained permission, said commissioner should forthwith remove them. The commissioner did remove the poles and wires so erected. After this action was taken, complainant, on August 10th and 16th, presented two petitions to the common council, asking permission to erect poles in certain specified streets and alleys. The council refused to grant permission, and permitted a rival company, known as the Twin City Telephone Company, engaged in the same business, to set up poles and string its wires in the streets and alleys of the city. Complainant was willing and anxious to conform to all reasonable and valid regulations with reference to the placing of its poles and stringing of its wires, and so stated in said petitions. The erection of these poles and wires is essential to enable complainant to do its business and meet the requirements of its subscribers. There is ample space on the streets, and no public necessity justifies the refusal. Under the act authorizing its incorporation, complainant has power to construct and maintain lines of wire, with the necessary erections and fixtures for use in transmitting messages, along, over, across, or under any public places, streets, and highways in the State. It is complainant's duty to receive and transmit messages without discrimination, and to furnish service without unreasonable delay. By the acceptance of the resolution of 1881, and the construction and maintenance of its telephone system, and by the granting of special rates and privileges to the city, a valid contract has been created between the parties, by virtue of which the city is estopped from denying the complainant's right to maintain and use existing poles and wires, and to continue to set poles and string wires over, on, and in the streets and alleys of the city. The action of the council (1) deprives complainant of its vested rights; (2) impairs the obligation of a contract; (3) deprives it of

property without due process of law, and denies to it the equal protection of the laws; (4) operates as a regulation of commerce among the States; (5) will produce irreparable injury. The relief asked is an injunction to restrain defendant from removing or interfering with complainant's poles and wires, and from interfering with the replacing of the poles already removed and with the erection of new ones.

The answer denies some of the allegations of the bill, and sets up new matter in defense. It does not, however, dispute the substantial and material allegations of the bill. It admits the removal of the poles, and the refusal to act upon the petitions of August 10th and 16th. It defends under an ordinance passed June 8, 1897, by which it was enacted that "no telegraph or telephone poles shall be located and erected on any street, alley, or public place in this city, and any such pole now erected shall not be taken up and again erected, without the consent of the city council." It sets up the ordinance granting a franchise to the Twin City Telephone Company, and states "that it has no doubt whatever that, if the complainant should ask for a similar franchise at the hands of the city council, the same would be granted."

Issue was duly framed, and the case heard in open court. September 21, 1898, the court made an order holding that the common council had the right to provide reasonable rules and regulations by which the complainant should be governed in the extension of its lines; that the council had no authority to arbitrarily prohibit complainant from erecting poles and wires upon the streets and alleys; that the reasonableness of such rules and regulations was subject to the review of the court; that unless said council should, within 30 days, pass and enact rules and regulations by which complainant was to be governed in the extension of its lines, the writ of injunction should issue, prohibiting the defendant from interfering with the complainant in erecting its poles or placing its wires. The order further required that, before extending its lines, complain-

ant should present to the court a statement of the manner in which it proposed to proceed with such extension, and prohibited complainant from proceeding except under such reasonable rules and regulations as the court should deem necessary for the public safety and convenience. On November 11th following, a formal decree was entered substantially the same as the order above recited. From this decree both parties appeal. Complainant attacks only so much of the decree as provides that the court should establish the reasonable rules and regulations. The defendant attacks the decree in its entirety.

*Wells, Angell, Boynton & McMillan* ( *N. A. Hamilton*, of counsel ), for complainant.

*James O'Hara* ( *Lawrence C. Fyfe* and *O'Hara & O'Hara*, of counsel ), for defendant.

GRANT, C. J. ( *after stating the facts* ). 1. It is conceded by the learned counsel for both parties that that part of the decree by which the court assumed the right to establish reasonable rules and regulations is void. This is a legislative or administrative function, and not a judicial one. The court has power to put the proper authorities in the defendant city in motion to adopt reasonable rules and regulations, and to pass upon the validity of such action when taken. This is the extent of its authority. *Houseman* v. *Kent Circuit Judge*, 58 Mich. 364; *City of Manistee* v. *Harley*, 79 Mich. 238. Other courts recognize the same rule. *Reagan* v. *Trust Co.*, 154 U. S. 362; *Appeal of Norwalk St. Ry. Co.*, 69 Conn. 576 (39 L. R. A. 794); *Nebraska Tel. Co.* v. *State*, 55 Neb. 627.

2. It is urged that the permission granted to the Telephone & Telegraph Construction Company was personal to that company, and could not be alienated without the consent of the city. That company was organized under a general law of the State, and derived its powers and obligations from that law. The only power which a city

could have exercised over it was that of regulation.   This is also true of the complainant.   The transfer was made August 31, 1895, was recognized as valid by the city, and has been acted upon by both the city and the complainant since that time; the latter having expended large sums of money upon its business and improvements.   Whether the city is now in position to question the validity of this transfer is at least debatable, but, as it is not argued by counsel, we refrain from discussing it.   Counsel for the defendant cite, in support of their contention, 25 Am. & Eng. Enc. Law, 751, where it is stated:

" The grant of a franchise public in nature, like that of a telegraph company, is personal to the grantee, and cannot be alienated except by consent of the granting power. Therefore a telegraph company has no power, in the absence of special authority, to alienate the privileges granted to it by the Federal or State government, and an agreement to transfer such privileges is *ultra vires* and void."

The compiler cites, to sustain the text, *U. S.* v. *Telegraph Co.*, 50 Fed. 28, and *Western Union Tel. Co.* v. *Railway Co.*, 1 McCrary, 581, 3 Fed. 721.   The general power of alienation was not discussed in the former case, nor was it raised.   The conclusion reached was based upon the language of the act of Congress authorizing the construction of the original Union Pacific Railroad.   The company sought to transfer its telegraph line, and to avoid its duty to maintain it.   It was noted as a significant fact that the words "railroad and telegraph " were used in connection 38 times in the act.   The railroad company was not seeking to transfer all its property, rights, and privileges to a successor who would be obligated to perform all the duties imposed by the act of Congress, but was seeking to carve up its franchise, and transfer a part of it to another corporation.   The duty of the railroad company to maintain a telegraph was held to be personal. The same principle was approved in *Western Union Tel. Co.* v. *Railway Co.*

We are also cited to Crosw. Electricity, § 158, which reads as follows:

"A grant to a telephone, telegraph, electric light or railway company of the power to use the streets, highways, and post-roads for the stringing of its wires and the setting of its poles contains so much of an element of personal obligation that such a grant is not assignable unless such a power of assignment is expressed in the language of the grant, or in some general legislation affecting the subject."

The same authorities are there cited to sustain the proposition as are cited in the encyclopedia, and, in addition, *Atlantic, etc., Tel. Co.* v. *Railway Co.*, 1 Fed. 745. That case involved the same act as the others.

The last clause of the above section reads, "If the grant is in terms to X., his successors and assigns, or similar language, it is assignable;" and cites *Atkinson* v. *Railway Co.*, 113 N. C. 581; *Toledo Consol. St. Ry. Co.* v. *Toledo Elec. St. Ry. Co.*, 6 Ohio Cir. Ct. R. 362; *California State Tel. Co.* v. *Alta Tel. Co.*, 22 Cal. 398; *Newman* v. *Village of Avondale*, 31 Wkly. Law Bul. 123. In *Atkinson* v. *Railway Co.* the question is not raised or discussed. The case was disposed of upon a demurrer to the bill of complaint, which set up that complainant had obtained a license from the city to build a street railway; that he had assigned it in escrow to one M., who, in breach of the trust reposed in him, assigned it to the defendant corporation. The right of sale and transfer of all the property of the corporation is not alluded to in the decision. In the Ohio case the contest was between two street railways, the question being as to the right of one company to use the tracks of the other. I do not find that the power to sell and transfer is even referred to in the case. In the California case the question is neither raised nor discussed. The sale there made was opposed upon other grounds. The case of *Newman* v. *Village of Avondale* I have been unable to find.

If defendant's contention be true, a mortgage of the

property and franchise of these corporations would be void. The mortgage and bonds would be valueless unless there was a right to foreclose, sell, and convey to another party a valid title to the property.  In *City of Detroit* v. *Gas-Light Co.*, 43 Mich. 594, the grant was to the corporation, or rather to the corporators or their assigns, who were to organize a corporation.  The ordinance was silent upon the right of alienation, yet the sale of its entire property was held valid.  It is immaterial that the construction company was not organized under the same act as was the complainant.  It was organized under another act, empowering such companies to carry on the like business; and one of its objects declared in its articles of association was the purpose of erecting and operating telegraph lines, etc., in the cities and towns of the State.  The public was not concerned in the transfer to another corporation.  It suffered no injury.  The assignee was subject to the same control and obligated to the same duties as was its assignor.  Justice CHRISTIANCY, in *Joy* v. *Plank-Road Co.*, 11 Mich. 165, asserted the right of corporations to dispose of their property by absolute sale or mortgage in payment of their debts, unless such right is limited by some express provision or just implication of a statute, or by the general policy of the State, to be deduced from its legislation.  In this opinion Chief Justice MARTIN concurred.  The other justices held the mortgage in that case valid under the statute, but reserved their opinions as to the general power of such corporations to mortgage.

But, whatever may be the common-law rule, the statute puts the question at rest, and expressly authorizes corporations to alienate their property.  3 How. Stat. § 4904*e*. The sale, therefore, to the complainant, was valid.

3. When the construction company and the complainant accepted the privileges granted to them by the laws of the State, and the municipality had duly given its permission, and the corporations had expended their money in valuable improvements, contracts were entered into which neither the State nor the municipality could impair

or destroy, in the absence of power to do so being reserved in the grant itself, or in the Constitution, which becomes a part of all such contracts. The Constitution and the statute clothe municipalities with power to control their streets and alleys, and protect them from things injurious and dangerous to the public; hence they have the power to make all reasonable rules and regulations for the erection and maintenance of poles and wires for telegraph and telephone companies. Here their power in the matter ceases. *City of Detroit* v. *Gas-Light Co.*, 43 Mich. 594; *City of Grand Rapids* v. *Hydraulic Co.*, 66 Mich. 606; *City of Saginaw* v. *Electric Light Co.*, 113 Mich. 660; *Baltimore Trust & Guarantee Co.* v. *Mayor, etc., of City of Baltimore*, 64 Fed. 159; *City of New Orleans* v. *Telephone & Telegraph Co.*, 40 La. Ann. 41 (8 Am. St. Rep. 502); *City of Quincy* v. *Bull*, 106 Ill. 337; *Hudson Tel. Co.* v. *Mayor, etc., of Jersey City*, 49 N. J. Law, 303 (60 Am. Rep. 619); *Town of Arcata* v. *Railroad Co.*, 92 Cal. 639.

Since the argument, counsel for defendant have called our attention to the recent case of *City of Richmond* v. *Southern Bell Telephone & Telegraph Co.*, 174 U. S. 761. The company in that case was acting under a law of Congress, and claimed the right under the act of Congress to use the streets without interference by the city authorities. The circuit court of appeals held that the rights and privileges granted by the act of Congress were subject to the lawful exercise of the police power belonging to the State or its municipalities. This holding was affirmed by the supreme court. That case is no authority for the action of the common council in the case before us. The city of Richmond had, through its common council, adopted an ordinance prescribing the terms under which the telephone company might use its streets. The reasonableness of that ordinance was not questioned.

The question is not, as counsel for the defendant state, the right to regulate the use of its public streets. This right is conceded by the complainant, and in the petitions it

presented to its common council.   The action of the council is practically prohibitive of the use of the streets.   The defendant city, by its act of incorporation, obtained no other or greater rights or control over the complainant than the village had over it and its assignor.   Both, under the police power inherent in municipalities, possessed the right of reasonable regulation.   The city succeeded to the rights of the village of St. Joseph, and was in fact the same body politic.   *City of Grand Rapids* v. *Hydraulic Co.,* 66 Mich. 606.

In reason and authority, it was the clear duty of the defendant to act upon the petitions presented to its common council by the complainant, and to establish reasonable rules and regulations for the erection of poles and the stretching of wires.   The decree in this respect is affirmed. Decree will be entered in this court in accordance with this opinion, and the defendant given 30 days after service upon its mayor of a certified copy of the decree to adopt rules and regulations in accordance therewith. Complainant will recover the costs of both courts.

The other Justices concurred.