WYANDOTTE ELECTRIC - LIGHT CO. *v.* CITY OF WYAN-
DOTTE.

124    43
145   ¹458

1. MUNICIPAL CORPORATIONS—FRANCHISE—DURATION OF GRANT.
    Where a municipal corporation grants to an electric-light company an easement in its streets for the maintenance of poles and wires, without specifying the time of user, the grant is good for the corporate lifetime of the grantee.

2. SAME—ELECTRIC-LIGHT COMPANIES—RIGHT TO QUESTION COR-
    PORATE EXISTENCE..
    Whether an electric-light company, incorporated, not under chapter 191, 2 Comp. Laws 1897, relating specifically to the formation of such companies, but under chapter 188, relating to the incorporation of manufacturing companies generally, is authorized to exercise a franchise for manufacturing electric light, and selling it to the inhabitants of a municipality, is a question which cannot be raised by the municipality granting the use of its streets for that purpose; the right to question the validity of corporate existence being open only to the State.

3. SAME—USE OF STREETS—POLES AND WIRES—REGULATIONS.
    Municipal authorities may adopt reasonable rules and regulations for the erection and maintenance of the poles and wires of electric-light companies.

Appeal from Wayne; Grove, J., presiding.   Submitted January 9, 1900.   Decided May 15, 1900.

Bill by the Wyandotte Electric-Light Company against the city of Wyandotte and others to restrain interference with complainant's poles and wires. Defendants filed an answer in the nature of a cross-bill, praying that complainant be required to remove such poles and wires from the streets. From a decree for complainant, defendants appeal. Affirmed.

The complainant was organized September 19, 1889, with four incorporators. Its articles of association recited that it was incorporated under Act No. 232, Pub. Acts 1885, as amended by Act No. 170, Pub. Acts 1889 (2 Comp. Laws 1897, chap. 188), entitled:

"An act to revise the laws providing for the incorporation of all manufacturing companies (except such as are contemplated by Act No. 42 of the Session Laws of 1867, which provides for the incorporation of persons or corporations engaged in the manufacture of salt), and mercantile companies, or any union of the two, and to fix the duties and liabilities of such corporations."

Its declared purpose was the manufacture and supply of electricity for power, heating, and lighting purposes. Its capital was $25,000, and its term of existence fixed at 30 years.

On September 25th it addressed to the mayor and common council of the city of Wyandotte the following communication:

"*Gentlemen:* We, the undersigned, a body corporate under the laws of the State of Michigan, do most respectfully request your honorable body to grant us a franchise to erect and maintain poles and wires through the streets of Wyandotte under the direction of the committee on streets; and your petitioners will ever pray," etc.

The records of the common council show that, "on motion of Alderman Gartner, the prayer of petitioner was granted, by the following vote: Ayes, 7; nays, none."

Under the franchise thus conferred, the complainant had, until the filing of this bill, September 12, 1898, continued to enjoy its plant, and extend its service to the inhabitants

of defendant city. This extension had been made by the acquiescence of the city, without any further action or any attempt upon its part to control the location or erection of poles. Complainant then had about 1,700 lights, and was engaged in extending its poles and wires quite extensively to other parts of the city. On August 3, 1898, the common council passed a resolution directing the city clerk to notify complainant to remove from the streets and other public places of the city all unused electric wires, all unused hoods, appliances for electric lights, and all other unused electric-wiring appliances within 10 days from the date of the passage of the resolution. It further instructed the clerk to notify complainant to remove all electric wires that were not properly insulated, and all from which the insulation had been worn or removed, within 20 days from the passage of the resolution. This notice was served on August 4th. At the time this action was taken, complainant was engaged in removing these unused wires, hoods, and appliances. It continued such removal after receiving such notice, and claims to have complied therewith as far as practicable.

On August 17, 1898, the common council adopted a resolution revoking and canceling "all previous licenses, permissions, or other acts of said common council giving complainant permission or authority to erect poles, wires, etc., in the streets, alleys, and other public places of the city, until it secures from the common council a franchise or ordinance giving it permission and authority so to do." This notice was duly served. Complainant replied, insisting upon its rights; that the action of the common council was null and void; but saying that, if the council would present the terms of the proposed new agreement, it would be glad to consider it, in the hope that the matter would be disposed of satisfactorily to both parties. To this communication the defendants made no answer, and, after waiting 10 days, complainant filed this bill, claiming that it had a contract with the city co-extensive with its life, subject to the reasonable regulations of the common

council with reference thereto, and praying for an injunction restraining the proposed action of the defendants. The defendants answered, claiming the benefits of a cross-bill, insisting that the petition and action of the common council in 1889 created a mere license, revocable at the will of the defendants; that such license was revoked by the resolution of August 17th; and praying that complainant be decreed to remove its poles and wires from the streets, and be restrained from any further use thereof. The case was heard upon pleadings and proofs taken in open court, and decree entered for the complainant.

*Edwin F. Conely* and *Orla B. Taylor*, for complainant.

*Charles H. Marr* (*Elliott G. Stevenson* and *Robert F. Eldredge*, of counsel), for defendants.

GRANT, J. (*after stating the facts*). There is one controlling question in the case. Upon its determination depend the rights of the parties. It can, perhaps, be better stated by stating the several contentions. The defendants contend that complainant, by organizing under the general manufacturers' act, obtained no franchise direct from the legislature to use the streets and highways, such as it would have acquired under the electric-light companies' act. Their second contention results from the first, namely, that the city had no authority to grant the franchise claimed by complainant. The complainant contends:

1. That the defendant city cannot make this collateral attack upon its act of incorporation; that the State had for nine years recognized the validity of its incorporation, and that the State alone is the party which can complain.

2. That the city is estopped to claim in this suit that the complainant ought to have been organized under some other statute, or ought not to have exercised the franchise of manufacturing and vending electric light to its inhabitants.

If complainant were organized under chapter 191, 2

Comp. Laws 1897, entitled "Electric-Light Companies," it would be clearly entitled to the relief asked. It would come within the doctrine enunciated in *Michigan Telephone Co.* v. *City of St. Joseph,* 121 Mich. 502 (80 N. W. 383, 47 L. R. A. 87), and *Michigan Telephone Co.* v. *City of Benton Harbor,* 121 Mich. 512 (80 N. W. 386, 47 L. R. A. 104). Section 7141, 2 Comp. Laws 1897, expressly gives to electric-light companies the authority—

"To lay, construct, and maintain conductors for conducting electricity through the streets, lands, and squares of any such city, town, or village, with the consent of the municipal authorities thereof, under such reasonable regulations as they may prescribe; and such corporation may make all such contracts and by-laws as may be deemed necessary and proper to carry into effect the foregoing powers."

By this statute electric-light companies are given the same rights in the streets as are telephone companies, when the assent of the municipality is obtained. An incorporation under this act, a petition to the city to erect poles and wires, or for a franchise for that purpose, and the grant of the same by the city, would make a contract binding for the life of the corporation. It would be immaterial that no time for the existence of the right or the franchise was specified. The grant in such case would be limited to the period of existence fixed by the charter. If a railroad company were organized for a period of 30 years, and a party, natural or corporate, should grant it a right of way without specifying the time of user, the grant would be for the lifetime of the corporation. The law would imply that both parties contracted with reference to its period of existence. The same rule is applicable here. *St. Clair County Turnpike Co.* v. *Illinois,* 96 U. S. 63, 68.

The purposes for which complainant was organized are precisely those covered by the electric-lighting act. It could not carry on its proposed business without the use of the streets, and immediately applied to the city for such use. The city so understood it. That the inhab-

itants of a municipality should be supplied with light is as essential as that they should be supplied with water and telephones.  They are all recognized by the law as necessary, made so by modern methods of living and business. The people of the State, through their legislature, have so determined by authorizing the formation of corporations for these purposes.  Whether the defendant city knew under what act complainant was organized does not appear.  Why complainant organized under this act is unexplained.  No good reason appears or is suggested for its doing so.  The only reasonable excuse is that somebody blundered.  Whether the act under which it was organized would permit its incorporation, we need not determine.  The State for nine years recognized its incorporation as valid.  The defendant city dealt with it for the same time as a valid corporation, granted it the franchise as requested, permitted it to erect and maintain an extensive plant; and now, when the city has gone into the business of municipal and commercial lighting, seeks to crush it, to utterly destroy its property, and compel its patrons to become the patrons of the city, which charges more for its service than does complainant.  It is needless to say that defendants are without equity, and that their contention ought not to prevail if the courts of equity have the power to prevent it.

We are of the opinion that the defendants are not in a position to raise the question of lack of power in the complainant, and that that question is one which the State alone can raise.  *Detroit City Railway* v. *Mills*, 85 Mich. 634 (48 N. W. 1007), and authorities cited in paragraph 2 of the opinion, page 647.  Where national banks have exceeded their authority in taking securities, the United States Supreme Court held that the parties interested could not complain so long as the government did not.  *National Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney*, 103 U. S. 99.  Applying the same rule to this case, defendants cannot complain so long as the State does not.  The contract is not *ultra vires*

the corporation, but, on the contrary, is one expressly authorized by the statute above cited and the charter of the city. It now seeks to interpose a mere technicality to destroy a valuable property. This courts of equity will not permit. "A court of equity is always reluctant in the last degree to make a decree which will effect a forfeiture." *National Bank* v. *Matthews*, 98 U. S. 621.

The common council are authorized to enact reasonable rules and regulations for the erection and maintenance of the poles and wires, and to compel the removal of those that are dangerous. This authority is fully defined in the telephone cases above cited.

Decree affirmed.

The other Justices concurred.