SAGINAW POWER CO. v. CITY OF SAGINAW et al.`

(Circuit Court, E. D. Michigan, N. D. July 26, 1911.)

No. 92.

1. MUNICIPAL CORPORATIONS (§ 106*)—STREETS—ELECTRIC COMPANIES—GRANT OF FRANCHISE—VALIDITY.

Where a city charter prohibited the granting of special franchises in the streets "until the same have been advertised for sealed proposals," an ordinance granting a franchise to an electric company and fixing the rates to be charged by it was not invalidated by the fact that, after proposals thereunder as it was originally drafted had been advertised for and a bid had been received, it was amended before passage, with the consent of the bidder, by substituting a lower rate more favorable to consumers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 193–198; Dec. Dig. § 106.*]

2. ELECTRICITY (§ 4*)—ELECTRIC COMPANIES—FRANCHISES AND RIGHTS.

A city ordinance granted to any corporation accepting its terms the right to operate an electric plant and use the streets for its poles, conduits, and wires. One of the conditions was that a company accepting should not enter into any combination with, nor sell its franchise or property to, any other company engaging in like business, and that a breach of such condition should "work a forfeiture to the city * * * of all privileges, franchises and advantages" derived thereunder. A company accepted the ordinance, and constructed and operated its plant thereunder for 20 years, after which it sold its property to another company which had recently secured a special franchise to construct and acquire and operate a plant for a term of 30 years. *Held*, that conceding the validity of the condition, and that the sale forfeited all franchises and rights of the selling company, such forfeiture did not include the physical property, nor affect the right of the purchaser to take and use it under its own franchise.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 4.*]

3. MONOPOLIES (§ 19*)—CONSTITUTIONAL LAW (§§ 278, 134*)—ELECTRICITY (§ 9*)—OBLIGATION OF CONTRACTS—ELECTRIC FRANCHISE—IMPAIRMENT BY ACTION OF CITY COUNCIL.

At the time of the sale, the selling company operated the only electric plant in the city, and the purchasing company had only its franchise, under which it thereafter operated the plant purchased, but at reduced rates to consumers fixed by its charter. Its charter was not exclusive. *Held*, that there was nothing in such facts to make it an illegal monopoly, and that a resolution of the city council ordering a removal of its poles, conduits, and wires from the streets was unauthorized and void as depriving it of its property without due process of law and an impairment of the contract made by the ordinance granting its franchise.

[Ed. Note.—For other cases; see Monopolies, Dec. Dig. § 19;* Constitutional Law, Cent. Dig. §§ 763, 344; Dec. Dig. §§ 278, 134;* Electricity, Dec. Dig. § 9.*]

In Equity. Suit by the Saginaw Power Company against the City of Saginaw and others. Decree for complainant.

Weadock & Weadock, for complainant.

A. Elwood Snow, for defendants.

ANGELL, District Judge. This is a bill filed to restrain the city, its common council, and executive officers from taking action pur-

suant to a resolution of the common council adopted August 15, 1910. By this resolution the Bartlett Illuminating Company, predecessor in title to the complainant, is directed to remove from the city streets its poles, conduits, wires, and other property, and, in default thereof, the city officers are directed to remove the same.

The case was heard upon pleadings and proofs. The controlling facts are not in dispute. The following is an outline of them:

In March, 1890, the Bartlett Illuminating Company was incorporated under the Michigan statute of 1881 (chapter 191, Compiled Laws of 1897), providing for the incorporation of electric light companies. In October, 1890, the city adopted a general ordinance to authorize the establishment of electric works. The Bartlett Illuminating Company took the steps required by that ordinance, and under it became vested with the right to use the city streets and public places with poles, conduits, wires, etc., for the purpose of furnishing electric light and power. This right was not an exclusive right. No rates were fixed in the ordinance. Until July 1, 1910, the Bartlett Illuminating Company was the only company furnishing electric service in Saginaw.

In 1908 the Eastern Michigan Power Company was organized under Act 232 of the Public Acts of Michigan for 1903 for the purpose of furnishing electric light and power. The act named was the only one in force at the time under which a corporation of the kind could be organized lawfully. The company was organized to carry on business in various counties, among others, Saginaw.

In December, 1908, the common council of Saginaw passed an ordinance granting to this company, its successors and assigns, the right to use the streets of the city in its business. The company accepted the ordinance, which contained a maximum rate provision of 11 cents for ordinary service. This rate was several cents lower than the general rate charged at the time by the Bartlett Company. This ordinance and the matters attending its adoption will be discussed in detail later.

In 1909 the complainant was organized under act 232 above mentioned for the purpose of carrying on the business of furnishing electric light and power. In June, 1910, it acquired by purchase from the Eastern Michigan Power Company all the rights which that company had acquired under the ordinance of 1908, and it acquired by purchase from the Bartlett Company all the property, plant, and franchise owned by that company. The Bartlett Company thereupon distributed to its stockholders the avails of this sale, called in and canceled its stock, and later filed the proper notice of the cessation of its business.

Since July 1, 1910, the complainant has been furnishing electric current to the citizens of Saginaw and to the city itself for its street lighting. It is furnishing service at the rates required by the ordinance of 1908 granted to the Eastern Michigan Company, except where those rates resulted in a charge larger than was being made by the Bartlett Company, and in such cases it has furnished service at the lower rates charged by the latter company. To 85 per cent. of the

consumers the rate has been lowered, and it has been raised to no consumer.

On August 15, 1910, the common council adopted the resolution which caused the filing of this bill. The resolution revoked the franchise granted the Bartlett Illuminating Company in 1890, required that company at once to remove its poles, wires, conduits, and other appliances from the streets, and, upon its failure to begin removal within 60 days of service upon it of the resolution, directed the city officers to commence removal of the same. The resolution in preambles sets out, among other things, that the conveyance of the Bartlett Company to the complainant of its property and franchises was in violation of the terms of the ordinance of 1890. When the resolution was passed, complainant had no producing plant and distributing system besides that acquired from the Bartlett Company. The Eastern Michigan Company had never erected a plant with which to operate under its ordinance.

The testimony is clear that to remove the apparatus mentioned would inflict serious loss on complainant, amounting to some hundreds of thousands of dollars.

Upon these facts complainant claims that the resolution of August 15, 1910, is a law which impairs the obligation of a contract, and, if acted upon, would deprive it of property without due process of law, and cause it irreparable injury.

Upon the filing of the bill, a restraining order was granted which is still in force. Three principal questions were argued by counsel:

[1] (1) The question of the validity of the ordinance of 1908 granting rights to the Eastern Michigan Power Company may be treated first. The complainant affirms, and the defendants deny, the validity of this ordinance. The ordinance runs to the Eastern Michigan Power Company by name. It provides that it shall inure to the benefit of the company's successors and assigns. It confers power upon the company, its successors and assigns, to construct, acquire, maintain, and use electric lights, etc., for a period of 30 years. It fixes maximum rates to be charged for service. There appears to be no question raised by the defendants of the corporate capacity of the Eastern Michigan Power Company to accept this ordinance, nor of the fact of its acceptance, nor of the corporate capacity of the complainant to take the assignment of the rights conferred by the ordinance upon the Eastern Michigan Company. The defendants claim that the ordinance is void by reason of an alleged defect or omission in advertising for bids for its acceptance. The complainant's claim is that the defect, if any, is immaterial, and that the city, having adopted and published the ordinance, cannot now be heard to allege its invalidity.

The charter of the city provides (chapter 24, § 8):

"The common council shall not grant any special franchise on any of the streets of said city until the same have been advertised for sealed proposals, nor for a longer term than thirty years, nor grant exclusive privileges for the use of the streets, sidewalks and public places."

On November 2, 1908, the common council received a petition for a franchise from the Eastern Michigan Power Company. On November 16, 1908, the common council, sitting in committee of the

whole, approved an ordinance, and directed the advertising of sealed proposals for its acceptance. This ordinance fixed the rates to be charged by the grantee at 14 cents per kilowatt hour for the first 60 hours. On November 23d a bid was submitted on behalf of the Eastern Michigan Company, and none from any other concern. At that session the ordinance was introduced, read twice, and laid on the table. The bid was received and accepted, the acceptance reconsidered, and the bid laid on the table. On November 30th the bid was taken from the table and unanimously accepted on condition that the bidder substitute "eleven" for "fourteen" in connection with the price to be charged. A communication from the bidder assenting to this, and to all other amendments to the ordinance, was at the same session received, read, and filed. Thereupon, at the same session, the ordinance was taken from the table, amended by substituting 11 cents for 14 cents in fixing the price to be charged for heat and light per kilowatt hour up to 60 hours, and, as amended, was unanimously adopted. Thereafter the ordinance was formally accepted by the grantee and the bond required under it deposited.

It is claimed by the city that the bid finally accepted was not that embodied in the sealed proposal, and that the council, therefore, had no power to adopt the ordinance which it did adopt.

While in the elaborate brief of counsel for defendants many cases have been collected, attention has been called to no case which seems to me precisely in point. The charter requires sealed proposals, but does not require the letting to the highest bidder, nor does it in terms certainly forbid what was here done. A sealed proposal was submitted as required, and was accepted. No other proposal was received. The acceptance was reconsidered and the matter left on the table of the council for future disposition. As no other proposal than that of the Eastern Michigan Company was received at the 14-cent rate, it cannot be said that the interests of the public were endangered because a fresh advertisement was not directed when the council concluded during the period that it was on the table to reduce the rate from 14 to 11 cents. The case is not one where without readvertisement a higher rate was arranged for. If the ordinance had been adopted as advertised and accepted, and then an amendment reducing the rate passed and accepted, there scarcely could have been any question as to the validity of the amended ordinance. The ordinance offered and that adopted and accepted were the same, except that the grantee assented to a change against its interest in the matter of rates. It may also properly be observed that the whole transaction was at the instance of the Eastern Michigan Company whose petition of November 2d set the council in motion.

Under such circumstances, my opinion is that what was done was not in violation of the charter provision quoted, and that the ordinance is valid. The ordinance having been duly accepted, a contract between the city and the Eastern Michigan Power Company was formed. The rights of the last-named company have now passed to complainant, which is competent to exercise them, and it has a contractual right to operate under the ordinance.

[2] (2) The effect of section 9 of the general ordinance of 1890 upon the rights of the parties is in dispute. That ordinance was one to permit any corporation duly organized under the laws of the state to establish, maintain, and operate in the streets poles, wires, conduits, and other electrical appliances upon certain conditions. The Bartlett Company as has been stated complied with the conditions and established, maintained, and operated its poles, wires, conduits, etc., in the streets for nearly 20 years. Section 9 of this ordinance provided that · corporations which took the benefits of the ordinance and their assigns should at no time enter into any combination with any other parties or corporations engaged in like business concerning rates to be charged for services, nor should such corporation nor its assigns sell its property, franchises, or privileges after the acceptance of the ordinance to any other person or corporation engaged or about to engage in like business, nor make any consolidation, transfer, or division of territory with any other persons or corporations engaged, or about to engage, in like business. It further provided that any violation of any provision of the section should "work a forfeiture to the city of Saginaw of all privileges, franchises and advantages derived thereunder, and the acceptance of this ordinance shall be deemed consent by said * * * corporations and assigns that such privileges, franchises and advantages granted shall vest in said city at once in case of such violation." The claim of the city is that the Bartlett Company by transferring to the complainant its property, privileges, and franchises was guilty of a violation of the terms of this section, and that thereby its right to maintain and operate its property in the streets was forfeited. It is not claimed that its poles, wires, conduits, etc., were forfeited, nor that these might not be sold to the complainant. Nor is it understood to be claimed that, if the ordinance of 1908 is valid, complainant is incapable of taking the benefit of that ordinance or of operating under it the property acquired from the Bartlett Company. The complainant is not operating its property under the ordinance of 1890, but under that of 1908. If that ordinance is valid, and if the complainant continues to operate under it, provided the complainant is not an unlawful monopoly, it is clear that the part of that resolution of August, 1910, which directs the removal of the poles, conduits, and wires, is unauthorized, and that, if it were carried out, it would deprive the complainant of its property without due process of law, and would impair the obligation of the ordinance contract of 1908, as alleged in the bill.

The dispute then between the parties on this branch of the controversy comes to this : While the complainant could acquire, and did acquire, the fixed property of the Bartlett Company, did it acquire, and could the Bartlett Company transfer to it, any right to maintain those appliances in the streets and to use them there? Under the act of 1881, as to electric light companies, the Bartlett Company upon its organization received from the state a right to construct, maintain, and operate in the highways of the state its poles, conduits, and wires, subject only to reasonable regulation by municipalities of this use of the highways. Michigan Telephone Co. v. St. Joseph, 121

Mich. 502, 80 N. W. 383, 47 L. R. A. 87, 80 Am. St. Rep. 520; Electric Light Co. v. Wyandotte, 124 Mich. 43, 82 N. W. 821.

Complainant urges that Saginaw could impose only reasonable regulations upon the Bartlett Company, and not such terms as those imposed in section 9 of the ordinance of 1890, and that under the charter the city had no power to embody in the ordinance the clause in question, and that the assent of the company to the ordinance did not operate to prevent it from transferring the privileges in the streets as a part of its property, in view of the statute under which it is organized and the statute permitting a sale by one corporation to another of its property. On the other hand, it is insisted by defendants that it was competent for the Bartlett Company and the city to agree upon the terms of the ordinance in question; that they did so agree, and that the complainant, as transferee of the Bartlett Company, cannot now be heard to say that it is not bound, or that the Bartlett Company was not bound, by the terms of section 9. So long as complainant continues to operate under the ordinance of 1908, it seems to be of no practical importance which party is right as to the point in dispute. If at some later day a decision of this question is important to the parties, it can be passed upon in some proper proceeding. I express no opinion upon it at this time, but reserve it for future determination, if necessary, in some other proceeding.

[**3**] (3) Defendants insist that complainant has created by its conduct an unlawful combination or monopoly, and has no standing in the case. An outline of the facts as to the organization and transactions of the complainant has been given above. It was organized under a law in force in 1909 to do a business lawful under the statutes of the state. It seems to have been duly and legally organized. It had corporate power to become vested with the rights in the streets conferred in 1908 upon the Eastern Michigan Power Company and its assigns and to exercise those rights. It had corporate power also to become the owner of the property belonging to the Bartlett Illuminating Company and to use that property, whether or not under section 9 of the ordinance of 1890 it could become vested with the rights in the streets granted to the Bartlett Company.

Moreover, as the assignee of the Eastern Michigan Company, it was vested with power under the ordinance of 1908 to acquire an electric lighting system as well as to construct such system. As bearing upon this point, it may also be important to observe that the complainant never acquired any of the stock of either the Eastern Michigan Company or the Bartlett Company; that the former company had no property, but only its rights under the ordinance, and that it conveyed all of its rights for a cash consideration; and that the latter company had both an ordinance right and fixed property and conveyed both to the complainant, which, as has been already said, is operating the fixed property under the ordinance which it acquired from the Eastern Michigan Company. The complainant has nonexclusive rights in the streets whether these are the street rights of the Eastern Michigan Company alone or those and the rights of the Bartlett Company. Complainant has a maximum rate ordinance acquired by assignment

from the Eastern Michigan Company, but it is not contended that the city, prior to coming into effect of the present Constitution, was lacking in power to make an ordinance contract affecting rates. Complainant is now charging for service no higher rates than those fixed by this ordinance, and in some instances is charging rates lower than those fixed by the ordinance. The city has always had power to grant a competing ordinance if it desires, and at least, under the charter in force prior to August 15, 1910, had power to regulate and maintain a system of its own for both private and public lighting.

It is argued by the defendants that the effect of the purchase by complainant above stated from the Eastern Michigan and Bartlett Companies is to suppress competition, and, if operations are conducted under the ordinance of 1908, to prevent control of rates by the Michigan Railroad Commission. The argument appears to be that, if the Bartlett Company had continued to do business, its rates would have been subject to the control of the Railroad Commission, as there was no rate provision in its ordinance. It may be true that its rates would thus have been subject to state control. The city, however, had chosen to grant in 1908 an ordinance containing a provision for maximum rates considerably lower than those being charged by the Bartlett Company. If the Eastern Michigan Company had constructed and operated a plant, and the Bartlett Company, finding that it was doing business at a loss, had gone out of business and sold its property to the Eastern Michigan Company, competition would have disappeared by reason of the city's grant to the Eastern Michigan Company. If the Eastern Michigan Company, on the other hand, had not constructed a system, and the Bartlett Company had continued to have the field to itself, as in years past, although its rates were subject to control by the State Railroad Commission, there would have been, of course, an absence of competition. There never had been competition in the business, and, in fact, there was none when the complainant took over the property of the Bartlett Company and the street franchise of the Eastern Michigan Company. Such taking over did not suppress any existing competition, nor is there anything to show there would have been competition if the complainant had not acted as it did. Its action did result in a large reduction in price of current to most consumers, especially small consumers, and gave to the citizens a benefit which they could derive from the ordinance of 1908 that up to July 1, 1910, had been of no practical use to them. It gave them, too, all the advantage they could have got if the Eastern Michigan Company had actively competed for business with the Bartlett Company.

I am forced to the conclusion that the complainant in purchasing what it did from the other two companies did not create an unlawful combination or monopoly, or disobey the statutes of the state.

My conclusion, therefore, is that the resolution of the common council of August 15, 1910, so far as it directed the removal from the streets and public places of the city of Saginaw of the poles, wires, conduits, and other apparatus named therein which had been formerly

the property of the Bartlett Illuminating Company, must be held unauthorized and void.

The complainant is entitled to a permanent injunction against the action of the defendants under said resolution looking to such removal of poles, wires, conduits, and apparatus.